[No. G005327. Fourth Dist., Div. Three. Dec. 19, 1989.]

In re the Marriage of CHERYL and ROBERT CARNALL.
CHERYL M. CARNALL, Respondent, v.
ROBERT C. CARNALL, Respondent;
LOS ANGELES COUNTY EMPLOYEES RETIREMENT
ASSOCIATION, Appellant.

**COUNSEL**

De Witt W. Clinton, County Counsel, John P. Farrell and David L. Muir, Deputy County Counsel, for Appellant.

Adrian Kuyper, County Counsel (Orange), and Donald H. Rubin, Deputy County Counsel, as Amici Curiae on behalf of Appellant.

Joseph A. Shuff III for Respondent Wife.

No appearance for Respondent Husband.

**OPINION**

**MOORE, J.**—This appeal requires us to construe Civil Code section 4800.8 in conjuction with the statutory scheme regulating distribution of survivor and death benefits under the County Employees Retirement Law of 1937. (Gov. Code, § 31450 et seq.; hereinafter Retirement Law.) In the present case, the lower court ordered a county employee retirement association, joined as a party in a marital dissolution proceeding, to designate a nonemployee spouse as the association member's "surviving spouse" for purposes of receiving survivor and death benefits under an employee benefit plan. We conclude that while the trial court properly held a portion of these benefits constitute a community asset subject to division in this proceeding, the foregoing order is erroneous. Accordingly, we reverse the judgment with directions.

### FACTS

Cheryl and Robert Carnall married January 18, 1968. They separated July 13, 1985. Thereafter, Cheryl filed this marital dissolution proceeding.

During the marriage and after separation, Robert was employed by the County of Los Angeles. Through his employment he was a member of the Los Angeles County Employees Retirement Association (claimant).

Cheryl obtained an order joining claimant as a party to the proceeding alleging she had an interest in Robert's employee benefits. Cheryl's pleading on joinder specifically sought a determination of her interest in Robert's survivor and death benefits under the pension plan. Claimant filed a notice of appearance and response. (Civ. Code, §§ 4351, 4363.1 et seq.)

In December 1986 the lower court dissolved the marriage. At that time, Cheryl and Robert resolved most of the proceeding's issues by stipulation. The division of Robert's survivor and death benefits under claimant's plan was set for trial on January 16, 1987. Only Cheryl appeared for the trial on this matter. The lower court rendered judgment as requested by Cheryl in her pleading on joinder.

A judgment on the reserved issues was filed February 3. It directed claimant to designate Cheryl: (1) "[A]s an irrevocable beneficiary to . . . [Robert's] death benefits under the plan pursuant to Government Code Section 31780(b) and related code sections"; (2) "to be . . . [Robert's] surviving spouse . . . under Government Code Section 31780(a) and related code sections"; and (3) as Robert's "[ ] surviving spouse . . . under Government Code Section 31760.1 and related code sections, and thereby entitled to a percentage of [Robert's] retirement allowance upon his death and for her life in the proportion that the length of [Cheryl's] marriage to [Robert] bore to [Robert's] term of employment under the plan." (Italics omitted.)

Although not clear from the limited record before us, it appears claimant received the judgment on reserved issues March 9. Claimant made a motion for reconsideration under Code of Civil Procedure sections 1008 and 473. Cheryl opposed it. The lower court denied the motion April 9. Claimant filed this appeal from paragraphs 2 and 3 of the judgment on reserved issues and the order denying its motion for reconsideration April 24.

DISCUSSION

I

Initially, we consider two procedural issues raised by the parties.

A. TIMELINESS OF THE POST-JUDGMENT MOTION

Citing Civil Code section 4363.2 claimant contends its motion to reconsider was timely. Subdivision (d) thereof states in part: "The employee

pension benefit plan shall not be required to, but may, appear at any hearing in the proceeding. . . . Those provisions of any order entered at or as a result of a hearing not attended by the plan (whether or not the plan received notice of the hearing) which affect the plan or which affect any interest either the petitioner or respondent may have or claim under the plan, shall not become effective until 30 days after the order has been served upon the employee pension benefit plan; . . . . If within the 30-day period, the plan files in the proceeding a motion to set aside or modify those provisions of the order affecting it, such provisions shall not become effective until the court has resolved the motion."

Cheryl argues claimant brought its motion under sections 1008 and 473 of the Code of Civil Procedure, not Civil Code section 4363.2. Although factually correct, her argument is without merit. Section 4363.2 applies as a matter of law to proceedings where an employee pension benefit plan is joined pursuant to Civil Code section 4363.1. (Civ. Code, § 4363.2, subd. (a).) While the lower court did not file stamp the moving papers until April 9, there is no question claimant timely made the motion.

Our conclusion should not be viewed as approving claimant's actions in this case. Cheryl's joinder pleading notified claimant of the nature of relief she sought respecting Robert's survivor and death benefits under the retirement plan. The lower court set a separate trial for this matter. The record reflects claimant was aware of the hearing.

Amicus correctly points out Civil Code section 4363.2 is based on the recognition that, in most marital dissolutions, a pension plan joined as a party stands in the position of a disinterested stakeholder. Thus, by giving the plan the option of not appearing at trial and seeking to set aside an order affecting its or another party's rights in the plan's benefits at a later time, the statute balances the interest of pension plans in avoiding the necessity of actively participating in every dissolution against the court's interest in conserving limited judicial resources.

But when the plan is aware of a spouse's proposed division of pension benefits and given notice of a hearing limited to that very matter, the balance clearly tips in favor of the courts. Claimant's failure to appear at the January 16 trial resulted in unnecessary delay, confusion and additional expense to the parties. It also resulted in this appeal.[1]

---

[1] It is our belief the procedure established by Civil Code section 4363.2 encourages the kind of problem that occurred here. We suggest the Legislature modify section 4363.2. One alternative would be to require a pension plan's attendance at a hearing limited to a determination

### B. Timeliness of the Appeal

■ Cheryl implies claimant failed to timely appeal from the judgment asserting the clerk mailed notice of its entry to the parties February 6. Examination of the record shows the notice of entry was mailed only to counsel for the Carnalls. There is no indication either Cheryl or Robert served notice of the judgment's entry on claimant. Therefore, the appeal was timely. (Cal. Rules of Court, rule 2(a); see also *Valley Vista Land Co.* v. *Nipomo Water & Sewer Co.* (1967) 255 Cal.App.2d 172, 173-174 [63 Cal.Rptr. 78].)

### II

We now turn to the merits of the appeal. At the start, two points must be kept in mind. First, the case is before us on a very limited record. The clerk's transcript contains only the pleadings and court orders relevant to the division of Robert's survivor and death benefits, and the judgment on reserved issues. The reporter's transcript covers only the hearing on claimant's postjudgment motion. Neither the record nor the parties have apprised us of how the lower court divided the other community assets and obligations.

Second, since the present appeal is from the judgment on reserved issues which only considered the parties' community interest in the pension plan's survivor and death benefits, our discussion relates solely to the division of those benefits. The parties apparently divided their other community assets by stipulation at the earlier hearing, presumably in an equal manner. (Civ. Code, § 4800, subd. (a).) No appeal has been taken from that determination and it is not before us for review. (See *In re Marriage of Fink* (1976) 54 Cal.App.3d 357, 366 [126 Cal.Rptr. 626].) Thus, our opinion does not take into account the division of any vested or nonvested retirement benefits payable to Robert while he is alive, or how the disposition of the parties' other community assets and obligations affects the distribution of survivor and death benefits.

### A. Statutory Background

#### 1. *Abolition of the Terminable Interest Rule*

■ It has long been held that benefits of an employee pension benefit plan accrued during marriage are community property subject to division

---

of the distribution of benefits if the parties give the plan notice of the hearing and their respective positions on the issue.

upon dissolution of the marriage. (*Cheney* v. *City and County of San Francisco* (1936) 7 Cal.2d 565, 569 [61 P.2d 754]; *Estate of Perryman* (1955) 133 Cal.App.2d 1, 3 [283 P.2d 298]; *Crossan* v. *Crossan* (1939) 35 Cal.App.2d 39, 40 [94 P.2d 609].) *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164] extended this principle to nonvested pension rights. (*Id.* at pp. 841-847.) However, before enactment of Civil Code section 4800.8, generally any right a husband or wife might have to survivor and death benefits under his or her spouse's public pension plan terminated upon the death of either spouse under the terminable interest rule. (*Waite* v. *Waite* (1972) 6 Cal.3d 461, 473 [99 Cal.Rptr. 325, 492 P.2d 13]; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 360-361 [33 Cal.Rptr. 257, 384 P.2d 649]; see Culhane, *Toward Pension Equality: A Reexamination of California's Terminable Interest Doctrine* (1984) 14 Sw.U.L. Rev. 613, 615, fn. 5.)

 "Briefly stated, this judicially created rule recognizes that an interest in a retirement plan traceable to contributions of community funds or to community labor constitutes community property; however, the interest of the nonparticipant spouse does not extend to benefits payable after the death of either spouse. Under the doctrine the nonemployee spouse takes a community share in the retirement benefits while the employee spouse is living [citations], but cannot alienate or devise those benefits [citation], which may be payable to a beneficiary other than the nonemployee spouse at the death of the employee, if so designated by the employee [citation], or to a subsequent spouse who qualifies under the pension plan as the employee's 'survivor' or 'widow.' [Citation.]" (*Chirmside* v. *Board of Administration* (1983) 143 Cal.App.3d 205, 208 [191 Cal.Rptr. 605], fn. omitted.)

The terminable interest rule was criticized by courts and commentators. (*In re Marriage of Becker* (1984) 161 Cal.App.3d 65, 73 [207 Cal.Rptr. 392]; *Chirmside* v. *Board of Administration, supra*, 143 Cal.App.3d at pp. 208-212; Culhane, *Toward Pension Equality: A Reexamination of California's Terminable Interest Doctrine* (1984) 14 Sw.U.L.Rev. 613, 618-632; Reppy, *Community and Separate Interests in Pensions and Social Security Benefits After Marriage of Brown and ERISA* (1978) 25 UCLA L.Rev. 417, 462-482.)

Several decisions limited the rule's scope. (*Chirmside* v. *Board of Administration, supra*, 143 Cal.App.3d at pp. 211-214 [rule did not apply to an employee spouse's accumulated contributions, thus permitting an ex-spouse to recover one-half of the community portion of the deceased employee spouse's undistributed contributions to a pension plan]; *In re Marriage of Becker, supra*, 161 Cal.App.3d at pp. 74-77 [remedy of a resulting trust

employed to protect a former wife's community interest in public pension benefits where, after her ex-husband's death, his "surviving spouse" elected to receive a monthly allowance in lieu of a lump sum death benefit consisting of the decedent's accumulated contributions plus an amount equal to six month's salary]; *Bowman* v. *Bowman* (1985) 171 Cal.App.3d 148, 155-156 [217 Cal.Rptr. 174] [terminable interest rule did not apply to an ex-spouse's community interest claim in her deceased former spouse's private pension benefits].)

In 1986, the Legislature enacted Civil Code section 4800.8 (Stats. 1986, ch. 686, § 1, p. 2313.) In part, it states: "The court shall make whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in any retirement plan, whether public or private, including all survivor and death benefits, . . ."

Section 2 of chapter 686 explained the statute's purpose: "It is the intent of the Legislature to abolish the terminable interest rule set forth in Waite v. Waite, 6 Cal.3d 461, and Benson v. City of Los Angeles, 60 Cal.2d 355, in order that retirement benefits shall be divided in accordance with Section 4800."

The Legislature amended Civil Code section 4800.8 in 1988 and added and amended provisions of the Education and Government Codes relating to the State Teachers' Retirement Law and the Public Employees' Retirement Law (Stats. 1988, ch. 542, No. 3 Deering's Adv. Legis. Service, pp. 1843-1854; eff. June 1, 1988.) In part, the amendments to the State Teachers' and Public Employees' Retirement Laws: (1) authorize courts hearing a marital dissolution or legal separation proceeding involving a member of the retirement system to divide the member's retirement contributions and service credit attributable to service periods during the marriage into two separate accounts in the name of the member and nonmember spouse; (2) confer certain rights on a nonmember spouse who is awarded a separate account; (3) permit a court to order the system to pay a nonmember spouse his or her community share of the retirement allowance by separate warrant; and (4) prohibit a member spouse from making a beneficiary designation in derogation of a nonmember's community property share of a retirement plan benefit except where the nonmember spouse previously obtained an alternative court order for division. (Stats. 1988, ch. 542, § 2 et seq., No. 3 Deering's Adv. Legis. Service, pp. 1844-1850.)

Civil Code section 4800.8 was amended to include provisions authorizing a trial court to issue orders dividing the state teachers' and public employees' accumulated community property contributions and service credit in

the manner just described. (Stats. 1988, ch. 542, § 1, No. 3 Deering's Adv. Legis. Service, p. 1844)

Chapter 542 also added Education Code section 22666 which states: "It is the intent of the Legislature to abolish any remaining application of the Terminable Interest Doctrine in California relating to the division of public retirement benefits in the event of dissolution of marriage or death." (Stats. 1988, ch. 542, § 2, No. 3 Deering's Adv. Legis. Service, p. 1850.) Section 8 of chapter 542 provided: "It is the intent of the Legislature that this act apply to all public retirement benefits in which there is an undivided community property interest . . . ." (Stats. 1988, ch. 542, § 8, No. 3 Deering's Adv. Leg. Service, p. 1854.)

### 2. *County Employees Retirement Law of 1937*

The judgment on reserved issues directs claimant to designate Cheryl as Robert's surviving spouse under Government Code sections 31760.1 and 31780, subdivision (a), and his beneficiary for benefits payable under section 31780, subdivision (b).

Article 11 of the Retirement Law sets forth the retirement allowance options for members, their surviving spouses or minor children, and designated beneficiaries. (Gov. Code, § 31760 et seq.) Section 31760 states a member is entitled to receive a retirement allowance for his or her life unless one of the optional plans specified in the article is chosen. (See Gov. Code, §§ 31761-31764.)

Under Government Code section 31760.1 the surviving spouse of a member who has chosen the unmodified allowance continues to receive 60 percent of the member's allowance after his death if the spouse is "designated as [the member's] beneficiary" and "was married to the member at least one year prior to the date of his [or her] retirement." If there is no eligible surviving spouse, the allowance is payable to the member's minor children, if any. In the event there is no eligible spouse or child, and the allowance the member received while alive did not equal or exceed his accumulated normal contributions, the member's designated beneficiary "shall be paid an amount equal to the excess of his [or her] accumulated normal contributions over his [or her] total retirement allowance income."

Article 12 of the Retirement Law allows for payment of a death benefit where a member dies *before* retirement. (Gov. Code, § 31780 et seq.) The standard death benefit consists of the member's accumulated contributions

plus six months salary at the rate received just before his or her death. (Gov. Code, § 31781.)

However, Government Code section 31780, subdivision (a) provides for payment of a death benefit "[a]s provided in Section 31765 or 31765.1 or 31765.11 or 31781.1, or 31787, if the surviving spouse or guardian of one or more of the surviving children of the member so elects." Government Code sections 31765, 31765.1, 31765.11, 31781.1, and 31787 generally provide for a retirement allowance to be paid to a surviving spouse or, if the member is not survived by a spouse, to a surviving minor child in lieu of the basic death benefit.

Claimant has not appealed from the portion of the lower court's judgment directing it to designate Cheryl as Robert's beneficiary under Government Code section 31780, subdivision (b). This subdivision awards the standard death benefit "to such person as [the member] nominates by written designation" unless an election is made under the foregoing sections or a survivor's allowance is payable under other specified articles of the Retirement Law.

But claimant and amicus note Government Code sections 31781.1 and 31787 permit a surviving spouse to preempt this benefit. Section 31781.1 states the "rights and privileges conferred by this section upon the surviving spouse and/or children . . . shall not be dependent upon whether they or any of them shall have been nominated by the deceased member as the beneficiary of any benefits payable upon or by reason of his [or her] death, but shall be superior to and shall supersede the rights and claims of any other beneficiary so nominated." Under section 31787 the surviving spouse or minor child of a member who dies as a result of an employment-related injury or disease may select an annual death allowance consisting of 50 percent of the member's final compensation "whether such surviving spouse or child was designated as beneficiary or not."

### B. APPLICATION OF CIVIL CODE SECTION 4800.8 TO THE RETIREMENT LAW

This case requires us to interpret Civil Code section 4800.8 in conjunction with the Retirement Law.

Statutes should be construed to harmonize with other statutes covering the same general subject. (Code Civ. Proc., § 1858.) ■ "In examining statutes that appear to conflict, we are guided by settled rules of statutory construction. The most fundamental of these rules is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] Statutes that are apparently in conflict should, if reasonably

possible, be reconciled [citation], even when the court interprets provisions in different codes [citation]." (*Walters* v. *Weed* (1988) 45 Cal.3d 1, 9 [246 Cal.Rptr. 5, 752 p.3d 443]; see also *In re Marriage of Paddock* (1971) 18 Cal.App.3d 355, 359 [95 Cal.Rptr. 162.)

 In part, claimant argues that, by defining Cheryl as the "surviving spouse" under the Retirement Law, the judgment substantially impairs its contract with Robert and adversely affects the rights of potential third parties. We conclude this contention has merit.

Cheryl counters claimant's argument with Civil Code section 4800.8. However, Cheryl's argument misses the point. Claimant does not contend survivor and death benefits cannot be extended to a former spouse. Rather, it insists such benefits "cannot be extended to an ex-spouse *in the manner the trial court did in this case.*" (Italics added.)

Under paragraph (2) of the judgment, claimant is ordered to designate Cheryl the "surviving spouse" under Government Code section 31780, subdivision (a), and related code sections. Similarly, paragraph (3) of the judgment awards Cheryl an entitlement which was intended to belong only to the spouse married to respondent at the time of his death and for at least one year before his retirement.

Civil Code section 4800.8, empowers courts to make "whatever orders are necessary or appropriate" to assure each party is awarded an equal share of the community property upon the dissolution of marriage, "including all survivor and death benefits." However, to designate a former spouse as the "surviving spouse" described Government Code in sections 31780, subdivision (a), and 31760.1 works a substantial injustice to claimant which we believe the Legislature did not anticipate or intend when it enacted section 4800.8. Paragraph (3) of the judgment might be read as restricting Cheryl's benefits under section 31760.1 to "a percentage of [Robert's] retirement allowance . . . in the proportion that the length of [Cheryl's] marriage to [Robert] bore to [Robert's] term of employment under the plan."[2] But this restrictive language does not avoid the problem. The judgment awards Cheryl an allowance for which she does not qualify under the statute, either to the exclusion of a subsequent qualified spouse or in addition to a subsequent qualified spouse—to the detriment of claimant's fund.

---

[2] The judgment contains no similar limitation in either paragraph (1) or paragraph (2) and allocates 100 percent of the benefits provided to Cheryl.

Furthermore, paragraph (3) bases Cheryl's entitlement upon "the length of [the] marriage." This portion of the order is itself erroneous. Cheryl has no community interest in any contribution made to the plan after separation from Robert. (*Bowman* v. *Bowman, supra,* 171 Cal.App.3d 148, 158; Civ. Code, § 5118.)

We conclude the limits of claimant's liability and obligation to pay benefits under the retirement plan are expressly defined by the statutory scheme set forth in the Government Code. Section 4800.8 of the Civil Code was not intended to alter or enlarge its liability, but rather to permit an equitable distribution of the benefits payable, based upon the proportion of the various community contributions used to fund the plan. The judgment, as it presently stands, is thus neither "necessary" nor "appropriate" within the meaning of section 4800.8 because it impairs the right of potential third parties who have express statutory entitlements.

Civil Code section 4800.8's objective is to ensure that Cheryl and others similarly situated receive their full and fair community share of a spouse's retirement plan. The statute does not create new community interests;[3] it simply preserves those interests existing upon dissolution that under prior law would have been extinguished by the death of either party. By safeguarding the community interests of the nonemployee spouse, section 4800.8 facilitates the equitable division of community property and cures an injustice in the former law. This intent can be effectuated in cases such as the present one without creating the specter of conflicting claims and thereby increasing the liability of pension plans beyond that accounted for by their actuaries in structuring the retirement benefit trust funds.

Thus, the broad sweep of Civil Code section 4800.8 has well-defined limits. The benefits available under the plan do not increase with each new spouse; rather, each spouse is entitled to receive a prorated share of the benefits provided by the benefit contract.

 Although the terminable interest rule has properly faded into history, certain policy considerations underlying the rule remain significant and, must continue to be respected: "(1) . . . [T]he employer is entitled to certainty concerning its obligations under its retirement program and must not be required to do more than is required by its contract with the employee spouse [citation] and (2) . . . the employer is entitled to maintain flexibility in the retirement program so it can effect reasonable modifications and changes [citations]." (*In re Marriage of Becker, supra,* 161 Cal.App.3d 65, 73.) Thus, our disposition here must seek to both implement the provisions of Civil Code section 4800.8 and provide "certainty" and "flexibility" to claimant regarding its future obligations.

---

[3] Listing a series of factual contingencies, the dissent contends this decision may result in future litigation if the trial court awards each spouse a prorated portion of Robert's survivor and death benefits. We disagree. Our resolution merely awards Cheryl one-half of *whatever* community property *interest* exists in the benefits; it does not determine the exact benefit due to her.

 Here, the trial court has ordered that Cheryl be designated the "surviving spouse" under the applicable Government Code provisions. If this order is allowed to stand in its present form, and Cheryl is treated as a qualified "surviving spouse," claimant's liablity will be affected in one of the following ways.

If Robert dies either before or after retirement, and is survived by a spouse or minor child, there will be two or more individuals with legal claims to the available benefits. In the event Robert dies without remarrying or leaving a child eligible to receive benefits, Cheryl would be entitled to receive all benefits due under claimant's plan. In either case, the judgment improperly reforms the pension contract to the detriment of claimant and other third parties, and most importantly gives Cheryl more than her share of the community's interest in Robert's benefits.

Pension plans structure their assets in large part based upon projections provided by actuaries. Were we to approve the trial court order directing Cheryl be designated Robert's "surviving spouse" under the Retirement Law, the foundation for actuarial appraisals and the financial integrity of the pension benefit system itself would be severely compromised. Thus, our disposition must seek both to implement Civil Code section 4800.8 and to provide claimant "certainty" as to its future obligations.

## C. DIVISION AND DISPOSITION OF COMMUNITY INTERESTS IN THE SURVIVOR AND DEATH BENEFITS

Tampering with the statutory definition of a "surviving spouse," works a substantial injustice to claimant and others which we believe the Legislature did not anticipate or intend when it enacted Civil Code section 4800.8. Accordingly, we cannot simply substitute Cheryl, a former spouse, for the statutory "surviving spouse." Rather, we must provide an avenue through which Cheryl can receive her full community share of the benefits in the plan and, at the same time, maintain the equilibrium of the bargain embodied in the pension benefit contract.

As a practical matter, our choices in achieving these dual goals are somewhat limited.[4] Under *In re Marriage of Brown, supra*, 15 Cal.3d 838, two options are available for the division of the benefits at issue.

First, the court could enter an order dividing each future pension payment in a manner to be applied when each payment becomes due. (*In re*

[4] *The present case arose in part because the Retirement Law has not been amended to conform with the abolition of the terminable interest rule. We encourage this be done and suggest all public retirement plans be so amended.*

*Marriage of Brown, supra*, 15 Cal.3d at p. 848.) Under this option, Cheryl would be entitled to an award of Robert's survivor and death benefits computed in accordance with the following formula: 50 percent multiplied by a fraction, the numerator of which represents the number of months of Robert's employment from the date of marriage to the date of separation, and the denominator of which is the total number of months of Robert's employment. Any remaining survivor or death benefits payable under the plan would be confirmed to Robert as his separate property. (*In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 759 [214 Cal.Rptr. 661].) *Brown* noted that such an order "renders it unnecessary for the court to compute the present value of the pension rights, and divides equally the risk that the pension will fail to vest." (*In re Marriage of Brown, supra*, 15 Cal.3d at p. 848.)

Here, even assuming Robert has a fully vested right under the plan to have his "surviving spouse" receive benefits upon his death, Cheryl, as a former spouse, would have no right to those benefits under the terms of the contract. Any such benefits would be due only to a spouse married to Robert either at the time of death before retirement, or at the time of death and for at least one year prior to the date of retirement if death occurs later. The difficulty, of course, is that the benefits to which the statutory "surviving spouse" will be entitled will have been earned by efforts attributable in part to the community of which Cheryl was a member. Therefore, should the trial court choose to utilize this option, an order will have to be fashioned which allocates to Cheryl a prorated share of the survivor and death benefits in accordance with the formula set forth above.

A similar order was formulated in *In re Marriage of Becker, supra,* 161 Cal.App.3d 65. In that case, the employee spouse was already deceased when his former wife sued the Public Employees' Retirement System (PERS) to recover her community share of the survivor's benefit statutorily payable to her husband's second wife, his "surviving spouse." The court held that, "because the surviving spouse in effect purchased her lifetime annuity in part with former wife's community share of the retirement contributions, she [held] a *pro tanto* portion of each monthly payment received by her from PERS as a resulting trustee for former wife." (*Id.* at p. 71.)

In theory, a similar order might be proper in this case. But with the advent of section 4800.8, trial courts may now do directly what the *Becker* court could not: order Cheryl's community share paid directly to her or her estate when the survivor and death benefits become due and payable under the plan. The Legislature has mandated that "[t]he court shall make whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in any retirement plan, . . . including all survivor and death benefits." (Civ. Code, § 4800.8.) Thus, the

trial court need not rely on *Becker*'s resulting trust theory which, instead of "assuring" the former wife of her full share in the community, leaves her at the mercy of a subsequent, unknown spouse who may, or may not, exhibit good faith in facilitating a just distribution of the proceeds.

The other option for division under *Brown* permits the court to determine the present value of Robert's survivor and death benefits under the plan, award this interest to Robert, and compensate Cheryl with other property of equal value. (*In re Marriage of Brown, supra*, 15 Cal.3d at p. 848; see also *In re Marriage of Verlinde* (1987) 189 Cal.App.3d 918, 922 [234 Cal.Rptr. 694].) Such an order, of course, may work to Robert's disadvantage, especially should his right to survivor and death benefits never vest. Presumably, any expert's opinion of the value of survivor and death benefits will take into consideration this possibility.

Finally, Civil Code section 4800.8, subdivision (b), expressly provides that the court is also empowered to "[o]rder a party to elect a survivor benefit annuity or other similar election for the benefit of the other party, . . . in any case in which a retirement plan provides for such an election." ██ ██ ██ ██ Such an option appears to be available under claimant's plan, and the court and parties may wish to consider it.[5]

On the limited record before us, we are not in a position to determine which remedy is most appropriate to the facts of this case. Nor is this court the proper forum to weigh and assign the relative risks involved in the options discussed above. ██ "The method in which community pension rights are divided is a matter within the trial court's sound discretion, considering the particular circumstances of the case." (*In re Marriage of Verlinde, supra*, 189 Cal.App.3d at p. 922, fn. omitted.)

Accordingly, we reverse the judgment and remand the case for a determination of an appropriate order consistent with the views expressed in this opinion. Such an order must assure Cheryl and Robert each receive their full community share of the survivor and death benefits but not increase claimant's liability. We feel confident that claimant will attend the next hearing and provide the trial judge with any assistance needed to resolve this matter.

In the interests of justice, each party shall bear its own costs on appeal.

Sonenshine, J., concurred.

---

[5] Our concurring and dissenting colleague suggests the trial court retain jurisdiction for an indefinite period of time to divide the community asset. But the reservation of jurisdiction remedy is limited to the distribution of benefits. It does not apply to a court's division of the community property interest in an asset. (*In re Marriage of Bergman, supra*, 168 Cal.App.3d at pp. 755-757.)

**WALLIN, Acting P. J.,** Concurring and Dissenting.—I concur in the reversal of the judgment directing the Los Angeles County Employees Retirement Association to designate Robert Carnall's ex-spouse Cheryl as his "surviving spouse." Robert is alive, employed by the County of Los Angeles and remains a member of its retirement association. According to the record he is also single. In any event Cheryl is unquestionably not his spouse. She may survive him but that is only a matter for speculation at present.

I therefore agree with the majority that Cheryl cannot be designated the "surviving spouse" under Robert's retirement plan, but I question the choice of remedies recommended to the trial court. In my view the trial court should be directed to retain jurisdiction over the survivor and death benefits until Robert retires or dies. When either of those events occurs the trial court will be presented with a factual context, something that is now lacking. It can then exercise its proper role and "weigh and assign the relative risks involved in the options." (Maj. opn., *ante,* at p. 1026.)

Generally, a court will not issue an order based on a speculative fact situation. Waiting for the facts to develop is especially wise here for three reasons. First, any order the court makes now will not bind a future Mrs. Carnall who could become the "surviving spouse" described in the statute. The new Mrs. Carnall, if she ever exists, may demand the plan pay her the entire survivor's benefit as the statute requires, notwithstanding the prior court order that it pay a prorated portion to Cheryl. This would force payment of more benefits than the plan itself provides, the very situation sought to be avoided by this appeal.

Second, if the trial court now orders the plan to pay Cheryl a prorated portion of the survivor's benefit when Robert dies, many questions remain the likely subject of future litigation. For example, what if a new Mrs. Carnall survives Robert, begins to collect her share of the benefit along with Cheryl, and then dies. Must the plan continue to pay Cheryl the benefit for the rest of her life even though there is no longer a surviving spouse? If so, how much of the benefit does Cheryl collect? Is it the total survivor's benefit times the number of months she was married to Robert while he was in the plan divided by the number of months he was in the plan? Is it one-half of that amount because she is receiving her community interest only and not a surviving spouse's annuity? What if Cheryl dies while collecting her portion along with the surviving spouse. Does Cheryl's portion go to her heirs? Or, since Cheryl could not have received any payments after her death had she remained married to Robert, does the surviving spouse's portion increase by the amount formerly paid to Cheryl? All the parties involved here will be better served if an order is issued when "the facts have sufficiently congealed to permit an intelligent and useful decision to be made."

*(California Water & Tel. Co.* v. *Los Angeles* (1967) 253 Cal.App.2d 16, 22 [61 Cal.Rptr. 618].)

Third, as the majority recommends, the Legislature may act to amend the County Employees Retirement Law to conform with the abolition of the terminable interest rule before Robert retires or dies. Presumably, if this occurs, the problems will be resolved. For these reasons, I would reverse the judgment designating Cheryl as the surviving spouse and direct the trial court to retain jurisdiction over the division of the community property interest in the survivor and death benefits, unless Robert decides to purchase Cheryl's future rights.

I also disagree with the majority's criticism of the Civil Code section 4363.2 procedure which allows a plan to challenge a family law order after it has been made, even though the plan fails to appear at the hearing. My review of the legislative history reveals the section is intended to accommodate both the need to join pension plans in family law proceedings for the protection of both spouses, and the need to avoid a virtually limitless drain on plan assets by requiring plan lawyers and actuaries to attend countless family law court proceedings. (Civ. Code, § 4363 et seq.)

One or both spouses are parties to an employee pension plan in many, if not most, marital dissolution actions. Both spouses are entitled to know the details of benefits provided by the plans in which either participates so that community interests can be valued and divided equitably. But plans need to hold down transactional costs to fulfill their primary function—the payment of benefits to retirees and their survivors.

Civil Code section 4363.1 allows for joinder through the use of simple forms. Typically, a plan then provides the parties and their counsel with an explanation of the benefits available to the member spouse. In the overwhelming majority of cases the parties proceed to resolve the pension plan issues without significant participation by the plan's attorneys. Since a plan is not concerned with how benefits are divided, but only with whether the proposed order is permitted by the plan and its governing statutes, most orders are routinely accepted by plan administrators.

Section 4363.2 assures the plan an opportunity to contest the occasional order which is contrary to law or the plan agreement. My colleagues suggest a return to the very situation which the Legislature has determined should be avoided. Since a plan could never be certain at what point in a family law action its concerns would be addressed, plan attorneys and

actuaries would need to be present at every stage.[1] While this is a laudable move toward full employment for the profession, it also means plan attorneys and representatives would be waiting their turn, at great expense to the plan itself, while the unhappy couple battle over the more difficult issues of custody, visitation, support and property valuation.

Courts exist to serve the public. When it comes to dividing rights to pension plan benefits, the Legislature has determined courts should bear the occasional inconvenience of a delayed challenge to an order rather than require a potentially more expensive and time-consuming hearing in every case. I respect that legislative judgment.

---

[1] The majority suggest a special hearing be set in every family law case for a determination of pension issues. Of course, this would create more problems than it solves. Yet another proceeding, with its concomitant time and expense to the parties, the plan and the courts, would be tacked on to family law actions. I am not convinced this would be less expensive and less time-consuming to all concerned than the occasional delayed hearing under section 4363.2.