[No. D024362. Fourth Dist., Div. One. Mar. 13, 1998.]

In re the Marriage of JOYCE and WILLIAM SCHOFIELD.
JOYCE SCHOFIELD, Respondent, v.
WILLIAM SCHOFIELD, Appellant.

**COUNSEL**

John Knoll for Appellant.

Sharron Voorhees for Respondent.

**OPINION**

**HUFFMAN, J.**—William Schofield (William) appeals a supplemental judgment and related findings and order issued by the superior court, directing

the federal Office of Personnel Management (OPM) to pay William's former wife, Joyce Schofield (Joyce), a specified amount of funds from William's retirement fund (previously determined to be a community asset in the parties' 1987 marital settlement agreement and dissolution judgment), which included a portion representing arrearages due to Joyce. William appeals, contending the manner in which the judgment and order handle the arrearages is violative of federal and state law, as an improper recharacterization of the parties' property division of the pension asset, and/or as an improper form of garnishment or execution of judgment on these public retirement benefits. We conclude the judgment and order are in compliance with applicable federal law and regulations, as well as community property principles, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

After a 26-year marriage, Joyce and William obtained a judgment of dissolution dated March 31, 1987, incorporating their marital settlement agreement. This judgment awarded William the civil service retirement pay from his career at the Post Office, and the military retirement pay to Joyce, and stipulated that William would not combine these retirement accounts. Jurisdiction was retained to enforce and carry out the terms of the agreement.

William then combined these retirement accounts, which effectively prevented Joyce from receiving payments from OPM, which handled the retirement funds. After Joyce brought an order to show cause, the parties stipulated in a July 1993 modification of the dissolution judgment that Joyce would receive that portion of his civil service retirement amounting to what she would have received from the military retirement had it not been combined with the other pension. Jurisdiction was retained by the trial court in the modification of judgment to ensure that Joyce receive her share of the retirement pay and to enforce the terms and conditions of the judgment.

William paid nothing to Joyce and she brought another order to show cause to require the payments to be made, along with arrearages, and to require OPM to make the payments. William filed a bankruptcy proceeding in Arizona, and Joyce obtained relief from the automatic stay. At the renewed order to show cause, William sought to have the court recognize an anticipated bankruptcy order that this debt was dischargeable in bankruptcy, but he was unsuccessful. The court received income and expense declarations from the parties. It made findings that William's arrearages of Joyce's portion of the pension benefits were $27,230.12. It then issued the supplemental judgment and accompanying findings and order, which we attach here as appendix A for the reader's convenience.

This supplemental judgment ordered that the amount to be paid each party by OPM be adjusted, such that Joyce receive $1,706.83 per month for 72 months, with her share to be adjusted downward thereafter to $1,206.83 (with both figures to include any cost of living adjustments (COLA)).[1] William was to receive the balance. The separate findings and order after hearing set the arrearages amount and provided that they should be paid through the vehicle of the supplemental judgment, which did not mention arrearages. (Appen. A, *post*, pp. 146-149.)

The trial court also issued a separate statement of decision at that time, but it was lost and not provided to the court file until later ex parte proceedings were conducted after the notice of appeal was filed. This statement of decision explained the court's reasoning that under the applicable regulations, the court was required to address arrearages by adjusting the percentage of the pension payable to the retired spouse, and concluded that this did not result in any "re-division" of the pension. The court stated that it had clearly distinguished in its order, as contrasted with its judgment, between the ongoing pension benefits owed to Joyce and the arrearages of those benefits also owed to her. The court interpreted the applicable regulations as placing only one limit on the court regarding payment of arrearages, i.e., the entire amount of the net annuity. (5 C.F.R. § 838.234 (1997), Collection of Arrearages; 5 C.F.R § 838.211(b), setting as the limit on the amount to be collected the entire amount.) Thus, the court set the portion to be paid by OPM to Joyce as including $500 per month arrearages, in addition to her monthly share of the pay, for the specified 72-month time period. (See appen. A, *post*, p. 148.)

William timely appealed the supplemental judgment and order, solely arguing the impropriety of the arrearages order.

DISCUSSION

I

*Statutory Framework*

■ The issue presented is whether the trial court had jurisdiction under federal and state law to fashion an order to enable Joyce to collect arrearages due upon a stipulated division of the pension asset, or whether, as William

---

[1]The original modification of the dissolution judgment set Joyce's share of the pension at $1,140.16. At the time of the order to show cause, Joyce was seeking a monthly payment of $1,173.96. The monthly amount ordered was $1,206.83. The slight variation in these figures is due to the COLA.

contends, this somehow amounted to an excess or abuse of jurisdiction, as invading William's share of the community asset. Joyce's position in response is that there is a federal statutory and regulatory scheme that enabled the court to take the action that it did. Before examining applicable federal law, we set forth basic rules which govern the family court in this area. "It is well established that California courts may apply community property principles to federally created benefits so long as the result does not frustrate the objectives of the federal legislation. [Citations.]" (*In re Marriage of Samuels* (1979) 96 Cal.App.3d 122, 125 [158 Cal.Rptr. 38].) Courts have discretion in the area of enforcement of family law judgments: Under Family Code section 290, "A judgment or order made or entered pursuant to this code may be enforced by the court by execution, the appointment of a receiver, or contempt, or by such other order as the court in its discretion determines from time to time to be necessary."

Family Code section 2610, dealing with retirement plans, reads in relevant part as follows: "(a) Except as provided in subdivision (b), the court shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits, including, but not limited to, any of the following: [¶] . . . [¶] (4) *Order a retirement plan to make payments directly to a nonmember party of his or her community property interest in retirement benefits. [¶] (b) A court shall not make any order that requires a retirement plan to do . . . the following: [¶] (1) Make payments in any manner that will result in an increase in the amount of benefits provided by the plan.*" (Italics added.)

To determine whether the trial court's actions were proper, we look to the general and administrative provisions of the law covering the federal employees' retirement system, 5 United States Code section 8401 et seq.[2] In particular, section 8467 deals with court orders for redirecting benefit payments from the federal employee to a former spouse or other family law judgment creditor. In pertinent part, section 8467 provides: "(a) Payments under this chapter which would otherwise be made to an employee, Member, or annuitant . . . based on service of that individual shall be paid (in whole or in part) by the Office or the Executive Director, as the case may be, *to another person if and to the extent expressly provided for in the terms of— [¶] (1) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident*

---

[2]All further statutory references are to the United States Code Annotated, title 5, Government Organization and Employees, unless otherwise specified.

*to any court decree of divorce, annulment, or legal separation . . . ."* (Italics added.)[3]

Section 8470 provides, inter alia, for a limited exemption from legal process for such benefits payable to the employee: "(a) An amount payable under subchapter II, IV, or V of this chapter is not assignable, either in law or equity, except under the provisions of section 8465 *or 8467*, or subject to execution, levy, attachment, garnishment or other legal process, *except as otherwise may be provided by Federal laws.*" (Italics added.)

These sections have been implemented by a number of federal regulations. As pertinent here, 5 Code of Federal Regulations, section 838.225 (1997) deals with the processing of amended court orders: "(a) If the employee, separated employee, retiree, or former spouse submits an amended court order pertaining to payment of a portion of the employee annuity, OPM will process the amended court order prospectively only, effective against employee annuity accruing beginning the first day of the second month after OPM receives the amended court order. [¶]*(b) A court order is not effective to adjust payments prior to the first day of the second month after OPM receives the court order unless—* [¶] *(1) The court order—* [¶] *(i) Expressly directs OPM to adjust for payment made under the prior court order;* and [¶] (ii) Determines the total amount of the adjustment or the length of time over which OPM will make the adjustment; and [¶] (iii) Provides a specific monthly amount of the adjustment or a formula to compute the amount of the monthly adjustment; and [¶] (2) Annuity continues to be available from which to make the adjustment." (Italics added.)

Also applicable here is 5 Code of Federal Regulations, section 838.234 (1997), dealing with collection of arrearages: "Specific instructions are required before OPM may pay any arrearage. *Except as provided in § 838.225 (b),* OPM will not increase a former spouse's share of employee annuity to satisfy an arrearage due the former spouse. *However, under § 838.225, OPM will prospectively honor the terms of an amended court order that either increases or decreases the court order's entitlement."* (Italics added.)

Another regulation which must be taken into account here is 5 Code of Federal Regulations, section 838.211 (1997), controlling the amounts of benefits that are subject to court orders; this section first states the conditions for payment of benefits pursuant to court order (e.g., the employee or former

---

[3]See also *U.S.* v. *Comer* (6th Cir. 1996) 93 F.3d 1271, 1280, footnote 12, interpreting section 8467 as providing "for payment of an employee's annuity to a person other than the employee in the contexts of divorce, annulment, legal separation, or child abuse."

employee shows entitlement to payment), and as to the allowable amount, states: "(b) Payment to a former spouse under a court order *may not exceed the net annuity*." (Italics added; also see 5 C.F.R. § 838.103 (1997), a definitions section, defining "court order" in this context as: "Court order means any judgment or property settlement issued by or approved by any court of any State [etc.; e.g., District, Commonwealth, or Indian court] in connection with, or incident to, the divorce, annulment of marriage, or legal separation of a Federal employee or retiree.")

## II

### *Application of Rules*

Having set forth the relevant law, we proceed to apply it to these facts. ■ Such questions of statutory interpretation are reviewed de novo: Where, as here, there is a lack of substantial evidentiary dispute about the facts giving rise to a question of statutory interpretation, ". . . the proper interpretation of statutory language is a question of law which an appellate court may review de novo, independent of the trial court's ruling or rationale. [Citation.]" (*Building Industry Assn.* v. *City of Oceanside* (1994) 27 Cal.App.4th 744, 771 [33 Cal.Rptr.2d 137].) ■ Here, William has not directly challenged the trial court's discretionary choice of the $500 per month figure for payment of arrearages, instead attacking the entire order as unauthorized by law. We therefore have no occasion to apply the abuse of discretion standard which would normally apply to review of a division of community assets. (See *In re Marriage of Emmett* (1980) 109 Cal.App.3d 753, 759 [169 Cal.Rptr. 473].)

William has two basic arguments that the judgment and order are erroneous: The amount to be collected by Joyce from the retirement pay which represents the arrearages is in violation of the basic "time rule" which sets the amount of an equal community property share in a pension asset (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 847-848 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; Fam. Code, § 2550); and/or, the judgment represents an incorrect execution of judgment or garnishment, etc., which would be contrary to federal and state statutory protections for retirement pay. We discuss these arguments separately.

### A

### *Amount of Judgment*

William contends Joyce should not receive any OPM payment above the $1,206.83 amount that represents the amount of military retirement pay to

which she is entitled, on the grounds that the court improperly recharacterized the arrearages as included in the monthly sum awarded. He generally relies on authority that trial courts are "without jurisdiction to modify an unqualified disposition of property rights in an interlocutory decree of divorce, except in accordance with methods applicable to judgments generally" (*In re Marriage of Maunder* (1976) 57 Cal.App.3d 570, 573 [127 Cal.Rptr. 707]). In that case, the wife sought a modification of the interlocutory decree to increase her spousal support by the value of her community property interest in the pension, which she was unable to collect due to federal law that was controlling at the time. This was not allowed because "relabeling" of the property interest in the pension as spousal support was not proper. (*Id.* at p. 573.)

William also relies on *In re Marriage of Carnall* (1989) 216 Cal.App.3d 1010, 1023-1026 [265 Cal.Rptr. 271], in which the court reversed a judgment ordering that the retirement plan (the claimant in that case) designate the former wife as the employee's "surviving spouse," even though they were now divorced. The judgment thus awarded the wife "an entitlement which was intended to belong only to the spouse married to respondent at the time of his death and for at least one year before his retirement." (*Id.* at p. 1022.) The Court of Appeal noted that the objective of former Civil Code section 4800.8 (now Fam. Code, § 2610) was "to ensure that [the wife] and others similarly situated receive their full and fair community share of a spouse's retirement plan. The statute does not create new community interests; it simply preserves those interests existing upon dissolution that under prior law would have been extinguished by the death of either party." (*Carnall, supra,* at p. 1023, fn. omitted.) Accordingly, the court found that the judgment improperly reformed the pension contract to the detriment of the retirement plan and other third parties; "most importantly," it gave the wife more than her share of the community's interest in Robert's benefits. (*Id.* at p. 1024.) The court reversed the judgment so that the trial court could make orders to ensure that each spouse received a full community share of the survivor and death benefits, while not increasing the plan's liability. (*Id.* at p. 1026.)

Based on *In re Marriage of Carnall, supra,* 216 Cal.App.3d 1010, William contends that the trial court could not impair the statutory rights of either the retirement plan or William's future or current spouse by ordering arrearages to be paid in addition to Joyce's monthly share. However, in *Carnall,* the Court of Appeal expressly said that it was not ruling upon any question presented about the division of any vested or nonvested retirement benefits payable to the husband while he was alive, such as is the case here. (*Id.* at p. 1017.) Rather, the court was dealing only with the division of the husband's survivor and death benefits. (*Ibid.*)

Moreover, this judgment did not go against the purpose of Family Code section 2610, to ensure that a spouse receive his or her full and fair community share of a retirement plan, nor did it impermissibly create any new community interest or increase the amount of benefits provided by the plan. (*In re Marriage of Carnall, supra,* 216 Cal.App.3d at p. 1023.) Jurisdiction was properly retained by the trial court in both the original dissolution judgment and the modification judgment to ensure that Joyce receive her share of the retirement pay, and to enforce the terms and conditions of the judgment. This was proper as pertaining to the distribution of benefits, rather than any underlying court division of the community property interest in the asset. (*Id.* at p. 1026, fn. 5.)

Further, the award of arrearages here does not in any sense constitute "relabeling" of the property interest in the pension into another form of entitlement under the dissolution judgment, such as was found improper in *Maunder* (57 Cal.App.3d at p. 573). The two pensions had already been combined and there is no basis for treating them differently at this time. Instead, the supplemental judgment and findings were within the scope of the action allowed under section 8467, that a payment which would otherwise be made to an employee or former employee may be made to another person as allowed by a court decree of divorce or the terms of a related property settlement agreement. Similarly, under section 8470, William could properly assign his rights to receive the payment pursuant to section 8467. The federal regulations (5 C.F.R. § 838.234 (1997)) confirm that OPM may pay arrearages if specific instructions are given, such as are provided in 5 Code of Federal Regulations (1997) section 838.225(b): Pursuant to that section, "OPM will prospectively honor the terms of an amended court order that either increases or decreases the court order's entitlement." (5 C.F.R. § 838.234.)

In light of these provisions, we are unpersuaded by William's alternative argument: Since 5 Code Federal Regulations, section 838.225(b) (1997), dealing with the processing of amended court orders, specifies that a court order will not be effective to adjust payments prior to the first day of the second month after OPM receives the court order unless that court order "[e]xpressly directs OPM to adjust *for payment made under the prior court order*" (italics added), the regulation must mean that adjustments can be made only for "payment made" (credits for William), not "payments not made" (debits to William). Instead, we believe a reasonable reading of 5 Code Federal Regulations, section 838.225(b), together with 5 Code Federal Regulations, section 838.234 (1997), allows trial courts to make orders to adjust payments of a portion of the employee annuity, within a certain specified time frame and pursuant to specific instructions, with the result of either increasing or decreasing the subject entitlement. There is no ceiling on

the amount that can be adjusted, except for the entire sum of the retirement pay, although that is a matter for the court's discretion. (5 C.F.R. § 838.211(b) (1997).) This procedure was duly followed here. Accordingly, we conclude the inclusion in the supplemental judgment of an amount representing $500 arrearages per month was not in violation of either state or federal law.

B

*Statutory Protections for Retirement Pay*

William next argues that the supplemental judgment and related findings and order impermissibly operate as a garnishment or execution of judgment on an additional share of the civil service retirement pay, over and above Joyce's monthly entitlement. In support, he cites certain state provisions exempting public retirement benefits from ordinary execution of a money judgment (Code Civ. Proc., § 704.110 et seq.; see also 8 Witkin, Cal. Procedure (4th ed. 1997) Enforcement of Judgment, § 194 et seq., pp. 210-213; *id.*, § 393 et seq., pp. 391-393). He also cites to section 8470(a), forbidding execution, levy, attachment, garnishment or other legal process upon federal retirement pay, *"except as otherwise may be provided by Federal laws."* (Italics added.) (As discussed above, section 8467 constitutes such a federal law which allows this type of order and judgment.)

William also relies on other federal law which represents a protection against garnishment of an individual's periodic payments under a retirement program (15 U.S.C.A. §§ 1601 et seq., 1671-1677, the Consumer Credit Protection Act). He claims that any effort to distinguish between the type of judgment that was issued here, and "garnishment," "execution of judgment," and the like, is merely a semantic exercise and does not reflect "the real world" effect of the judgment, i.e., reducing his current retirement pay share. We disagree that there is no meaningful distinction here, because in our view, sections 8467 and 8470, and related regulations, clearly allow the trial court to craft an order which will deal with the problem of collecting arrearages that have been accrued pursuant to a valid judgment or modification that established a community share in retirement pay. That was done here in accordance with established federal procedure, and there is no basis to view the arrearages order as an impermissible garnishment or execution of judgment.

C

*Fees and Costs*

In conclusion, Joyce has sought an award of attorney fees and costs on appeal pursuant to Family Code section 2030. Such a request must properly

be addressed to the trial court in the first instance, and we express no opinion on that subject.

## Disposition

The supplemental judgment and order are affirmed.

Work, Acting P. J., and Nares, J., concurred.

## APPENDIX A

KENNETH E. MARTONE
Clerk of the Superior Court

JUL - 3 1995

By J. PECORE, Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF SAN DIEGO**

| In re the Marriage of | ) | CASE NO. D 221964 |
|---|---|---|
| | ) | |
| Petitioner: JOYCE F. SCHOFIELD | ) | JUDGMENT RE THE PORTION OF |
| | ) | RESPONDENT'S PENSION |
| and | ) | BENEFITS WHICH BELONG TO |
| | ) | PETITIONER, JOYCE F. |
| Respondent: WILLIAM H. SCHOFIELD | ) | SCHOFIELD (SUPPLEMENTAL |
| | ) | JUDGMENT) |

IT IS HEREBY ADJUDGED, that this Supplemental Judgment shall be incorporated into and shall become an integral part of the Judgment of Dissolution of Marriage signed by the Court and filed on March 31, 1987.

1. The Court, having examined the pleadings and heard the evidence and argument of counsel, finds that all necessary prerequisites of law have been satisfied and that this Court has jurisdiction of all parties and the subject matter of this cause, and, the Court further finds that certain interests and rights under the Civil Service Retirement System hereinafter described are part of the community estate of the parties and have been previously partitioned in the Judgment of Dissolution of Marriage signed by the Court and filed on March 31, 1987 and that community

. . .

*Appen. A*

IN RE MARRIAGE OF SCHOFIELD

CASE NO. D 221964

. . .

property shall be paid out in accordance with this Supplemental Judgment.

2.    JOYCE F. SCHOFIELD has the following date of birth, social security number and current address:

DATE OF BIRTH:  07-25-30

SOCIAL SECURITY NUMBER:  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

ADDRESS:   290 "K" Street, #3
           Chula Vista, CA 91911-1330

3.    WILLIAM H. SCHOFIELD has the following date of birth, social security number and current address:

DATE OF BIRTH:  08-16-30

SOCIAL SECURITY NUMBER:  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

ADDRESS:   1404 North Gila Drive
           Payson, AZ 85547

4.    The court has considered the requirements and standard terminology provided in part 838 of Title 5, Code of Federal Regulations.   The terminology used in the provisions of this Supplemental Judgment that concern benefits under the Civil Service Retirement System are governed by the standard conventions established in that part.

5.    If the Office of Personnel Management (OPM) has received a previous Order or Judgment regarding the rights set forth herein, OPM is expressly directed to adjust payments to JOYCE F. SCHOFIELD to conform to the content of this Supplemental Judgment.

. . .

-2-

68

IN RE MARRIAGE OF SCHOFIELD

CASE NO. D 221964

. . .

On its effective date as determined by OPM, this Supplemental Judgment supersedes and replaces any previous Order or Judgment.

6. WILLIAM H. SCHOFIELD is eligible for retirement benefits under the Civil Service Retirement System based on employment with the United States Government.

a. Commencing when this Supplemental Judgment becomes effective after its receipt by the Office of Personnel Management (OPM), JOYCE F. SCHOFIELD is entitled to $1,706.83 per month from WILLIAM H. SCHOFIELD's civil service retirement benefits as her community property portion of such benefits. When a COLA is applied to WILLIAM H. SCHOFIELD's retirement benefits, the same COLA applies to JOYCE F. SCHOFIELD's share.

b. Commencing on the month following that month which counts as the 72nd month for which $1,706.83 is paid per subparagraph a above, JOYCE F. SCHOFIELD is entitled to $1,206.83 (to which is to be added the amount of the COLAs which have accrued during the period subparagraph a above was in effect) per month from WILLIAM H. SCHOFIELD's civil service retirement benefits as her community property portion of such benefits. When COLA's are applied to WILLIAM H. SCHOFIELD's retirement benefits, the same COLA applies to JOYCE F. SCHOFIELD's share.

c. The United States Office of Personnel Management is directed to pay JOYCE F. SCHOFIELD's share directly to JOYCE F. SCHOFIELD.

. . .

C:\WP46\DOCS\B-S\SCHOFIEL\RETIRE.JDG

69

IN RE MARRIAGE OF SCHOFIELD

CASE NO. D 221964

. . .

7. Each party shall be solely responsible for all state or federal income taxes due as a result of their receipt of their percentage of the pension income.

8. The Court reserves jurisdiction to modify the rights of the parties if case law or statutory law affect the rights or benefits including, but not limited to, an arithmetical error.

9. The Court further reserves jurisdiction to ensure that both parties receive their full portion of the benefits payable hereunder.

IT IS SO ADJUDGED.

Dated: **JUL 3 1995**

refused to sign
ROBERT F. WESLEY,
Attorney for Respondent

ALAN B. CLEMENTS
COMMISSIONER
JUDGE OF THE SUPERIOR COURT

-4-

C:\WP48\DOCS\R-2\SCHOFIEL\RETIRE.JDC

·70

ames P. Clark, Esquire
01 West Broadway, Suite 2001
an Diego, California 92101
ar No. 79877
ATTORNEY FOR (Name): JOYCE F. SCHOFIELD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 1555 Sixth Avenue
MAILING ADDRESS: SAME
CITY AND ZIP CODE: San Diego, California 92101
BRANCH NAME: Family Law

**F** KENNETH E. MARTONE **D**
Clerk of the Superior Court
JUL - 3 1995
By: J. PECORE, Deputy

PETITIONER/PLAINTIFF: JOYCE F. SCHOFIELD

RESPONDENT/DEFENDANT: WILLIAM H. SCHOFIELD

CLAIMANT:

| | |
|---|---|
| **FINDINGS AND ORDER AFTER HEARING**<br>(Family Law – Domestic Violence Prevention – Uniform Parentage) | CASE NUMBER.<br>D 221964 |

1. This proceeding was heard

on (date): 03-02-95    at (time): 8:45 a.m. in Dept.: F-4    Room:

by Judge (name): Alan B. Clements    ☐ Temporary Judge

☒ Petitioner/plaintiff present    ☒ Attorney present (name): JAMES P. CLARK
☐ Respondent/defendant present    ☒ Attorney present (name): ROBERT F. WESLEY
☐ Claimant present    ☐ Attorney present (name):

On the order to show cause or motion filed (date): 06-24-94    by (name): JOYCE F. SCHOFIELD

2. THE COURT ORDERS

3. Custody and visitation:    ☐ As attached    ☐ Not applicable

4. Child support:    ☐ As attached    ☐ Not applicable

5. Spousal-Family support:    ☐ As attached    ☐ Not applicable

6. Property orders:    ☐ As attached    ☐ Not applicable

7. Domestic Violence Miscellaneous Orders    ☐ As attached    ☐ Not applicable

8. Other orders:    ☒ As attached    ☐ Not applicable

9. ☐ Attorney fees (specify amount): $    ☐ payable as child support    ☐ payable as spousal support
Payable to (name and address):

Payable ☐ forthwith ☐ other (specify):

All other issues are reserved until further order of the court.

JUL 3 1995

**ALAN B. CLEMENTS**
**COMMISSIONER**
JUDGE OF THE SUPERIOR COURT

oved as conforming to court order.

SIGNATURE OF ATTORNEY FOR ☐ PETITIONER/PLAINTIFF ☒ RESPONDENT/DEFENDANT
ROBERT F. WESLEY    (Continued)    Page 1 of 8

Adopted by Rule 1296.31
Judicial Council of California
1296.31 (Rev. January 1, 1992)

**FINDINGS AND ORDER AFTER HEARING**
(Family Law – Domestic Violence Prevention – Uniform Parentage)

7

ATTACHMENT 8 TO MARCH 2, 1995 FINDINGS AND ORDER AFTER HEARING IN RE MARRIAGE OF SCHOFIELD                    CASE NO. D 221964.

. . .

1.    **IDENTIFICATION OF THE PARTIES**

Petitioner JOYCE F. SCHOFIELD shall be referred to within this order as "Wife." Respondent WILLIAM H. SCHOFIELD shall be referred to within this order as "Husband."

2.    **ARREARAGES IN THE PAYMENT OF PENSION BENEFITS**

Husband is in arrears in the payment to Wife of her portion of Husband's pension benefits in the following amounts for the following periods:

A.    From inception through July 31, 1993: $3,420.48.[1]

B.    August 1, 1993 through December 31, 1993: $5,700.00, plus interest calculated through April 30, 1995, $760.00,[2] for a total of $6,460.00.

C.    January 1, 1994 through December 31, 1994: $14,087.52, plus interest calculated through April 30, 1995, $1,173.97, for a total of $15,261.49.

D.    January 1, 1995 through April 30, 1995: $4,455.32, plus interest calculated through April 30, 1995, $60.34, for a total of $5,508.63.

E.    Thus, the total arrears subject to this order, B. - D., is $27,230.12.

---

[1]    This amount is not part of the arrearages ordered herein. This amount is pre bankruptcy petition, which petition was filed by Husband in July 1993.

[2]    The arrears for this period were not specified by month. Thus, the $5,700.00 figure begins bearing interest on January 1, 1994.

F:\WP60\DOCS\R-Z\SCHOFIEL\03-02-95.ON2

72

**148**

ATTACHMENT 8 TO MARCH 2, 1995 FINDINGS AND ORDER AFTER HEARING IN RE MARRIAGE OF SCHOFIELD                    CASE NO. D 221964

. . .

3.  **PAYMENT OF ARREARAGES IN PENSION BENEFITS**

Husband shall pay to Wife the sum of $500.00 per month against the arrearages set forth in paragraph 2.E. above. These arears shall be paid through the vehicle of the "Judgment re the Portion of Respondent's Pension Benefits Which Belong to Petitioner Jcyce F. Schofield (Supplemental Judgment)," specifically paragraph 6, which is anticipated to be filed concurrently with this order.

4.  **CONFIRMATION OF SPECIFIED INFORMATION BY HUSBAND**

Within 30 days from the date of hearing herein, in other words, on or before April 1, 1995, Husband shall provide to Wife, through Wife's counsel, proof of the amount of the SBP premium and proof that Wife is the sole beneficiary of Husband's SBP.

5.  **ATTORNEY FEES AND COSTS**

Husband shall pay to Wife the sum of $10,000.00 as and for a further contribution to Wife's attorney fees and costs. This amount is payable furthwith. Payment shall be made to Wife care of her attorney, James P. Clark, 501 West Broadway, Suite 2001, San Diego, CA 92101-3505

6.  **CONTENT OF THE JUDGMENT DIRECTED TO OPM FOR THE PURPOSE OF OBTAINING FOR WIFE DIRECT PAYMENT OF THE PENSION AMOUNTS DUE TO HER**

A.  The "Judgement re the Portion of Respondent's Pension Benefits Which Belong to Petitioner, Joyce F. Schofield . . .

-3-

72

ATTACHMENT 8 TO MARCH 2, 1995 FINDINGS AND ORDER AFTER HEARING IN RE MARRIAGE OF SCHOFIELD                    CASE NO. D 221964

. . .

(Supplemental Judgment)" which is attached to this order as Exhibit 1 shall be filed and then served by Wife upon OPM.

B.    The court finds (1) that the wording of the Judgment is appropriate to cause the appropriate money to be paid to Wife and (2) that the word "arrearage" or any similar word does not exist in the vocabulary of OPM. The court further finds that, per Civil Code section 3528, "the law respects form less than substance." Hence, Exhibit 1 is the proper vehicle to carry out the intent of this court.

7.    **WIFE'S REQUEST FOR SECURITY FOR PAYMENT OF FUTURE RETIREMENT**

Wife's request that this court order Husband to provide security for the payment of future pension benefits is denied for want of jurisdiction to do so.

8.    **ORDERS NOT IN CONFLICT**

All orders not in conflict with those set forth herein shall remain in full force and effect.

74