[No. H029176. Sixth Dist. Mar. 23, 2007.]

In re the Marriage of KEITH and KUM SMITH.
KEITH A. SMITH, Appellant, v.
KUM C. SMITH, Respondent.

1116

**COUNSEL**

Tarkington, O'Neill, Barrack & Chong and Robert A. Roth for Appellant.

Steven R. Pogue for Respondent.

**OPINION**

**PREMO, J.**—In this family law matter Keith A. Smith (Keith) appeals from a postjudgment order dividing his military retirement benefits. He argues that the trial court erred by requiring him to pay his former wife Kum C. Smith (K.C.)[1] a percentage of any veterans' disability payments he may receive during his retirement and by requiring that he participate in the military's Survivor Benefit Plan (10 U.S.C. §§ 1447–1455) (SBP) and name K.C. as his sole beneficiary. Finding no error, we shall affirm.

## I. *Facts*

Keith and K.C. were married in 1987. The marital status was dissolved on June 23, 2004. Marital property was divided by agreement contained in a judgment filed October 8, 2004. At the time, Keith was a colonel in the United States Army. His service in the Army had begun eight years prior to his marriage to K.C. and he was still on active duty when he and K.C.

---

[1] Consistent with the tradition in marital dissolution cases, we refer to the parties by their given names for the sake of clarity and mean no disrespect in doing so. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1 [97 Cal.Rptr.2d 707].) We refer to Ms. Smith as "K.C." because that is the name she has used throughout these proceedings.

separated. Keith expected to retire around September 2005. If Keith retired as planned, roughly 60 percent of the military retirement would have been community property, giving K.C. about a 30 percent interest in the retirement asset. The precise percentage would depend upon the date Keith actually retired and his rank at the time of retirement.

The stipulated judgment dividing the marital property contains the following paragraph: "The U.S. Army Retirement shall be divided. Petitioner will be given credit for his separate interest for the period of time that he was in the armed services prior to marriage and the period of time subsequent to marriage. The community interest shall be equally divided. The parties agree to use Edwin Shilling to prepare necessary documents. The parties to share the costs equally." No appeal was taken from the judgment.

The parties had expected Edwin Shilling, an expert in military retirement benefits, to prepare the "necessary documents" to ensure that the military pay center would have what it needed to give effect to the portion of the judgment pertaining to Keith's retirement pay. After judgment was entered K.C. learned that Shilling did not accept joint representations. K.C. retained Shilling herself and Shilling prepared a proposed order for her. Keith opposed the proposed order on the grounds that it was inconsistent with the judgment and with federal law.

A hearing was held at which Shilling testified as an expert to assist the court in understanding the requirements of the pertinent federal law. No other evidence was taken. Keith had wanted to testify about his understanding of the meaning of the stipulated judgment but the trial court refused to accept the evidence, holding that the stipulated judgment "speaks for itself." The trial court adopted the proposed order. Keith appeals from that order.

## II. *Discussion*

### A. *The Disability Pay Issue*

#### 1. *Introduction*

■ Veterans who became disabled as a result of military service are eligible for disability benefits. (38 U.S.C. §§ 1110, 1131.) With exceptions not pertinent here, a military retiree may receive disability benefits only to the extent that he or she waives a corresponding amount of retired pay. (38 U.S.C. § 5305; 10 U.S.C. § 1414.) There are several advantages to taking disability rather than retirement pay so that retirement pay waivers are quite common. (*Mansell v. Mansell* (1989) 490 U.S. 581, 583–584 [104 L.Ed.2d 675,

109 S.Ct. 2023] (*Mansell*).) Although federal law permits courts in community property states to treat military disposable retired pay as community property, retirement pay that has been waived in favor of disability may not be treated as community property. (*Id.* at pp. 594–595.)

There is no evidence that Keith was receiving or was eligible for disability pay at the time the court entered the order he challenges here. Nevertheless, the court's postjudgment order requires that, if Keith later elects to receive disability in lieu of retirement, he must pay K.C. the amount of the retirement pay she would lose as a result of his waiver.[2] Keith contends that this provision was not contemplated by the judgment and that it is impermissible under federal law.

■ Keith's argument requires interpretation of the parties' stipulated judgment. The interpretation of a written instrument is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) Unless interpretation turns upon the credibility of extrinsic evidence, an appellate court is not bound by the trial court's construction but makes an independent determination of the meaning of the writing. (*Ibid.*; see *Lucas v. Elliott* (1992) 3 Cal.App.4th 888, 892 [4 Cal.Rptr.2d 746].)

### 2. *Legal Framework*

Members of the Armed Forces who serve for a specified period of time may retire and receive "retired pay." (See, e.g., 10 U.S.C. §§ 3911, 3929.) In 1981, the United States Supreme Court held that federal law prohibited state courts from treating military retired pay as community property. (*McCarty v. McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728].) In response, Congress passed the Uniformed Services Former Spouses' Protection Act (USFSPA), which authorizes courts in community property states to treat "disposable retired pay" as community property. (10 U.S.C. § 1408(c)(1).) The USFSPA defines disposable retired pay as: "the total

---

[2] The pertinent provisions of the postjudgment order are paragraphs 6 and 16. Paragraph 6 states: "6. [¶] . . . [¶] B. 'U.S. Army Retirement' shall mean Member's total military retirement. It includes all payments paid or payable under the provisions of Title 10 of the United States Codes, before any statutory, regulatory or elective deductions are applied other than the cost of the survivor benefits of Former Spouse . . . . It also includes any sum taken by Member in addition to or in lieu of retirement benefits." Paragraph 16 provides: "If the amount paid by the military pay center to Former Spouse is less than the amount specified above, Member shall initiate an allotment to Former Spouse in the amount of any such difference to be paid from any federal entitlements due Member, with said allotment to be initiated by Member immediately upon notice of such difference."

monthly retired pay to which a member is entitled" less, among other things, amounts deducted as a result of the waiver required to receive disability benefits. (10 U.S.C. § 1408(a)(4).) In *Mansell*, the United States Supreme Court held that since the USFSPA expressly excluded disability benefits from the definition of disposable retired pay, retired pay that has been waived to receive disability benefits may not be treated as community property. (*Mansell, supra*, 490 U.S. at pp. 594–595.) Thus, where a military spouse had been receiving both disability benefits and retired pay at the time of dissolution, the state court could divide the retired pay but could not divide the disability payments. (*Ibid.*)

The *Mansell* holding led many state courts to look for creative solutions to prevent a former spouse from losing his or her interest in the military retirement as the result of unilateral action on the part of the military spouse. *In re Marriage of Krempin* (1999) 70 Cal.App.4th 1008 [83 Cal.Rptr.2d 134] (*Krempin*) held that a postjudgment waiver of retired pay could not, in proper circumstances, reduce the former spouse's monthly benefit. In *Krempin*, the judgment gave the wife a 25 percent interest in the husband's Air Force retirement with monthly payments to commence when the husband retired. The marital settlement agreement incorporated into the judgment added: " 'The Court in the parties' dissolution action will reserve jurisdiction to make such orders relating to these retirement benefits as are necessary to carry out this agreement.' " (*Id.* at p. 1011.) After judgment was entered, the husband retired and the parties filed another stipulation, which stated that "the defense accounting and finance center would begin direct payment to [wife] of her $327 monthly share of the pension in July 1994, and that [husband] would pay that sum to [wife] until those direct payments started." Husband was soon determined to be completely disabled and he waived all his retirement benefits in order to receive disability. Retirement pay ceased and wife's payments were reduced to nothing. (*Ibid.*)

*Krempin* distinguished *Mansell*, noting that the challenged judgment in *Mansell* had given the nonmilitary spouse a community property interest in retirement pay that the military spouse had already waived to obtain disability benefits and, therefore, the award directly conflicted with the USFSPA. (*Krempin, supra*, 70 Cal.App.4th at p. 1015.) "There is no such 'direct' conflict when the waiver of retirement pay occurs *after the judgment* and new payments are ordered to enforce what had been a proper division of marital property, even if the payments account for the military spouse's receipt of new benefits or pay which could not have been divided in the first instance." (*Ibid.*) *Krempin* reviewed the cases from out of state that had confronted similar issues and found that a majority of state courts take equitable action, on one theory or another, to compensate a former spouse when his or her share of retirement pay is reduced by the other's postjudgment waiver. (*Ibid.*) *Krempin* concluded that the issue hinged on "the scope of the judgment's

reservation of jurisdiction and the agreements in the judgment and the postjudgment stipulation with respect to appellant's payments. If the reservation of jurisdiction and the payment provisions can be interpreted to apply in the event of a waiver of retirement pay, the court has the power to grant the relief appellant seeks." (*Id.* at p. 1018.)

In *Krempin*, the provisions of the judgment and the parties' stipulation were reasonably susceptible to the construction urged by both parties. Language referring to payment by "the 'Defense Accounting and Finance Center'" could be read to mean that wife would take only retired pay because disability benefits are paid by the Veterans Administration, not the defense accounting and finance center. (*Krempin, supra,* 70 Cal.App.4th at p. 1019.) On the other hand, the stipulation identified the wife's interest as a specific dollar amount and provided that the husband would pay that amount until direct payments began, which suggests that the parties had presumed the wife's interest to be her share of the total retirement pay. (*Id.* at pp. 1020–1021.) This interpretation, the court observed, was strengthened by the reservation of jurisdiction, which suggested that the parties may have anticipated future contingencies such as waivers of retirement pay which might call for new arrangements to preserve the original bargain. "This interpretation would be consistent with commentaries which advise including a reservation of jurisdiction in the marital settlement agreement as a way of protecting the nonmilitary spouse from future waivers of retirement pay." (*Id.* at p. 1020.)

The court remanded the case to the trial court to allow the parties to offer extrinsic evidence to support their respective positions. (*Krempin, supra,* 70 Cal.App.4th at p. 1020.) "If the trial court were to conclude that the parties intended for appellant to continue to receive her original share of respondent's retirement pay even if he waived all or a portion of that pay to obtain disability benefits, the *Mansell* case would not prevent the court from giving appellant the benefit of her bargain [by imposing a resulting trust]." (*Id.* at p. 1021.) Under *Krempin*, therefore, the question is whether the stipulated judgment contemplated the division of the retirement asset as it existed at the time of judgment or whether the parties had agreed that Keith could waive all or part of the retirement benefit and thereby unilaterally reduce the value of the asset to be divided.

### 3. *Analysis*

The marital property was divided by the stipulated judgment. The only reference to the military retirement is the single paragraph stating: "The U.S. Army Retirement shall be divided. Petitioner will be given credit for his separate interest for the period of time that he was in the armed services prior

to marriage and the period of time subsequent to marriage. The community interest shall be equally divided. The parties agree to use Edwin Shilling to prepare necessary documents. The parties to share the costs equally."

■ Keith argues that the trial court should have admitted extrinsic evidence to aid interpretation of this paragraph. We disagree. "Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible . . . .' " (*Parsons v. Bristol Development Co.*, *supra*, 62 Cal.2d at p. 865.) This five-sentence portion of the stipulated judgment admits of no ambiguity. It does not purport to divide "disposable retired pay," it divides the "community interest" in the "U.S. Army Retirement." There is no mention of Keith's receiving disability pay or of his eligibility for it and, unlike the judgment in *Krempin*, it does not specify that K.C. is to collect her interest from the defense accounting and finance center. The reference that Shilling would "prepare necessary documents" reflects an understanding that postjudgment proceedings would be needed to implement the division set forth in the judgment.

Keith points to the provision in the judgment that states that "the community interest" shall be divided. He maintains that since disability benefits cannot be community property, the judgment does not expect that disability benefits would be divided. But the reference to the "community interest" follows the explanation that the retirement is not wholly community since part of Keith's service occurred before and after the marriage. The judgment merely confirms that only the community interest, and not Keith's separate interest, is to be divided. The judgment plainly indicates that K.C. would receive half of the retirement benefit remaining after taking account of the portion Keith earned before and after the marriage. There is nothing in the language of the judgment that would make it reasonably susceptible of the interpretation Keith urges, i.e., that the parties had agreed that Keith could reduce or eliminate the retirement asset by his voluntary waiver sometime in the future.

■ The plain meaning of the agreement is consistent with the general rule in this state, which is: "If a spouse elects to receive a disability pension when he or she is qualified for a retirement benefit based on longevity of service, the pension is a community asset except for (1) that portion which is attributable to service before marriage, and (2) that portion which, by virtue of its disability status, exceeds the amount of the longevity benefit." (*In re Marriage of Higinbotham* (1988) 203 Cal.App.3d 322, 332 [249 Cal.Rptr. 798], citing *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 788 [148 Cal.Rptr. 9, 582 P.2d 96].) It is not, as Keith argues, inconsistent with federal law as interpreted by *Mansell*. It is important to recall that *Mansell* held merely that the federal law does not grant state courts the power to divide

"military retirement pay that *has been* waived to receive veterans' disability benefits." (*Mansell, supra,* 490 U.S. at p. 595, italics added.) In this case, so far as we can tell from the record, Keith was not receiving any disability payments when judgment was entered so the court did not divide retirement pay that "has been waived." The postjudgment order merely provides that, if Keith does elect to receive disability in lieu of retirement in the future, he will indemnify K.C. for his unilateral reduction of the retirement asset, thereby ensuring that K.C. will receive the benefit of the bargain she made at dissolution. (See, e.g., *In re Marriage of Gaddis* (1997) 191 Ariz. 467, 468 [957 P.2d 1010].)

### B. *The Survivor Benefit Plan*

#### 1. *Introduction*

The trial court ordered Keith to participate in the SBP and to name K.C. as the beneficiary. The order also requires Keith to pay part of the premium. Keith argues that the judgment did not contemplate division of the SBP so that it should not be part of the postjudgment order at all. In the alternative, Keith contends that he should not be required to pay any part of the premium and that the order wastes a large portion of the benefit so that he cannot make it available to his new wife.

To the extent Keith's argument requires interpretation of the judgment, we apply our independent review. (*Lucas v. Elliott, supra,* 3 Cal.App.4th at p. 892.) The remainder of Keith's argument concerns the manner in which the court divided the community interest in the United States Army retirement. " 'The method in which community pension rights are divided is a matter within the trial court's sound discretion, considering the particular circumstances of the case.' " (*In re Marriage of Carnall* (1989) 216 Cal.App.3d 1010, 1026 [265 Cal.Rptr. 271], quoting *In re Marriage of Verlinde* (1987) 189 Cal.App.3d 918, 922 [234 Cal.Rptr. 694].) "As a general rule, in selecting a method to effect distribution of the community interest in retirement rights the court acts in the exercise of judicial discretion and its determination respecting such will not be interfered with on appeal unless an abuse of discretion is shown. The criterion governing judicial action is reasonableness under the circumstances. The method adopted may vary with the facts in each case." (*In re Marriage of Freiberg* (1976) 57 Cal.App.3d 304, 312 [127 Cal.Rptr. 792], disapproved on other grounds in *In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 425 [174 Cal.Rptr. 493, 629 P.2d 1].)

#### 2. *Legal Framework*

■ "Under California law, retirement benefits earned by a spouse during a marriage are community property, subject to equal division upon the

dissolution of that marriage." (*In re Marriage of Gillmore, supra,* 29 Cal.3d at p. 422, citing *In re Marriage of Brown* (1976) 15 Cal.3d 838, 842 [126 Cal.Rptr. 633, 544 P.2d 561].) The trial court may make that division by whatever method or formula it determines, in its discretion, will achieve substantial justice between the parties. (*In re Marriage of Steinberger* (2001) 91 Cal.App.4th 1449, 1459 [111 Cal.Rptr.2d 521].)

■ Family Code section 2610, subdivision (a) provides that the family court "shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits." Listed among the types of orders the court is authorized to make is an order requiring a party "to elect a survivor benefit annuity or other similar election for the benefit of the other party, as specified by the court, in any case in which a retirement plan provides for such an election." (Fam. Code, § 2610, subd. (a)(2).)

■ The military retirement scheme does not include a death benefit but military retirees may participate in the SBP (10 U.S.C. §§ 1447–1455), which provides benefits in the form of an annuity payable to a designated beneficiary upon the death of the retiree (10 U.S.C. § 1450(a)). The cost of participation is withheld from the member's monthly retirement pay. (10 U.S.C. § 1452.) Although the service member must pay a premium to participate in the SBP, the plan is not entirely self-financing; the government contributes to some of the cost, which makes the participant's cost of coverage less expensive than it would otherwise be. (*McCarty v. McCarty, supra,* 453 U.S. at pp. 215–216.) The maximum survivor benefit is 55 percent of the member's retired pay. (10 U.S.C. § 1451(a)(1)(A).)

■ An eligible participant may elect to name a former spouse as the SBP beneficiary. (10 U.S.C. § 1448(b)(2), (3).) And federal law allows state courts to order military service members to participate in the SBP and to designate a former spouse as beneficiary as part of a dissolution agreement. (10 U.S.C. § 1450(f)(4).) An election designating a former spouse as beneficiary prevents the member from designating a new wife or any other former spouses as additional beneficiaries. (10 U.S.C. § 1448(b)(2)(B), (C).)

### 3. *The Trial Court's Authority to Order SBP Coverage for K.C.*

The trial court's order states:

"Payments of Member's retired pay will terminate upon his death, and therefore, payments to Former Spouse of her award would also terminate. However, the government has established the Survivor Benefit Plan (SBP) by

which payments to a stated beneficiary of a portion of Member's retired pay will continue after his death. Applicable statutes allow a former spouse to be named as beneficiary of under [*sic*] the SBP. Former Spouse shall be named as the irrevocable former spouse beneficiary of Member for a portion of the maximum survivor benefits sufficient to approximately protect her dollar interest in Member's U.S. Army Retirement."

Keith argues that the parties had not agreed to divide the SBP and, therefore, the trial court had no authority to make this order. Keith's argument assumes that the SBP *benefits* are a community asset subject to division at dissolution. In this case, however, the asset is not the survivor's benefits, which have yet to be purchased. The asset is simply the right to participate in the SBP. This right may, arguably, be characterized as marital property with a value that could be actuarially calculated. But the parties made no effort to do that and the trial court did not treat it that way. Rather, the court used the SBP as an equitable means to ensure that K.C. receives her community share of Keith's retirement pay. The court unquestionably had jurisdiction to do that under Family Code section 2610 and 10 United States Code section 1450(f)(4).

Using the SBP to ensure that the former spouse continues to receive retirement benefits makes division of the military retirement more equitable. Ordinarily, when a former husband dies the former wife does not lose any of the marital property confirmed to her at dissolution. That is not true with the military retirement. If Keith dies before retirement, K.C. will not receive a penny of retirement pay. If he dies after retirement, K.C.'s checks will stop upon his death. As K.C.'s expert Edwin Schilling explained: "[H]er payments are totally dependent upon his retiring and then living." By requiring Keith to name K.C. as his SBP beneficiary, the court ensured that K.C. would not be deprived of her interest in the retirement if Keith predeceases her. Several courts in other states have employed the same method. (See, e.g., *Harris v. Harris* (2001) 261 Neb. 75, 83 [621 N.W.2d 491] [SBP is necessary to guarantee former spouse "continues to receive an important marital asset" if member spouse predeceases her]; *Marriage of Bowman* (1987) 226 Mont. 99, 108 [734 P.2d 197] [survivor's benefits protect wife's 29-year investment in the marital estate]; *In re Marriage of Payne* (Colo.Ct.App. 1995) 897 P.2d 888, 889 [SBP is not a separate asset awarded to wife but "an equitable mechanism selected by the trial court to preserve an existing asset, i.e., wife's interest in the military pension"].) As the *Payne* court explained, the order merely gives the former wife the right already enjoyed by her former husband, that is, the right to receive her share of the marital property for her lifetime. (*In re Marriage of Payne*, at p. 889.)

The judgment in this case provided that the "U.S. Army retirement shall be divided." The court divided the retirement and then ensured that K.C. would

receive her share of that asset after Keith's death by requiring Keith to name her as the SBP beneficiary. The trial court's order also acknowledges that if K.C. remarries before the age of 55 she will lose her entitlement to SBP coverage. (10 U.S.C. § 1450(b)(2).) The trial court provided for that contingency by allowing K.C. to protect her interest with life insurance. Thus, the SBP election was part of the trial court's overall effort to fairly divide the retirement benefit specified in the judgment. Under the circumstances, the order was reasonable and not an abuse of discretion.

### 4. *The SBP Premiums*

During Keith's lifetime K.C. will be entitled to roughly 30 percent of Keith's retirement pay. Thus, K.C. would not be entitled to the maximum SBP benefit of 55 percent of the total retired pay. With this in mind, the postjudgment order provides for two levels of benefits. The first level is for K.C. to receive her proportionate interest in the maximum benefit, which the order refers to as the "pro-rata portion" of the maximum survivor benefit. The pro rata portion would amount to about 16.5 percent of Keith's retired pay (30 percent of 55 percent is 16.5 percent). The second level of benefit is the amount that would give K.C. the full amount of retired pay she would have been receiving during Keith's lifetime. The order requires the parties to share equally the cost for the first level of benefit. K.C. must pay the additional cost necessary to obtain the second level of benefit.[3] Our arithmetic indicates that, if K.C. elects the second level, Keith will absorb approximately 28 percent of the total cost and K.C. will pay for 72 percent.

Keith argues that there is no justification for requiring him to pay any portion of the premium with his separate property. He insists that he should not be required to use his separate property (his postdissolution retirement pay) to purchase a "separate property benefit" for K.C. Keith's argument misses the point of the court's order. As we have already explained, by requiring Keith to name K.C. as the SBP beneficiary, the trial court was attempting to guarantee that K.C. receive her full share of the military retirement. Keith already has a right to receive retirement payments for his lifetime but K.C. does not have the right to receive payments for her lifetime. An equal division of the retirement demands some method for giving K.C. a right equal to Keith's. One way to do that is to purchase an annuity, i.e., the SBP.

---

[3] The trial court's order allocates the cost of the benefit as follows: "[T]he amount necessary to provide Former Spouse with a pro-rata portion of the maximum survivor benefits shall be shared equally by the parties. The portion necessary to increase Former Spouse's survivor benefit from a pro-rata share up to the amount necessary to maintain approximately level benefits before and after Member's death shall be paid solely by Former Spouse."

■ We detect no unfairness in having Keith pay half the cost of the first level of benefits. Indeed, the court allocated that cost to Keith as a setoff for the right that he has in what is termed the "pop-up" feature. Under the federal law, K.C. is prohibited from leaving her interest to anyone. (10 U.S.C. § 1450(i).) If K.C. predeceases Keith, Keith will receive not only his share of the retirement but K.C.'s share as well. Keith argues that the pop-up feature has no value to him because K.C. will probably outlive him. The record contains no evidence on the point other than the fact that Keith, who is now 47 years old, is about three years older than K.C. Absent evidence that K.C. is certain to outlive Keith, there is necessarily some probability that Keith will outlive K.C. and thereby receive the full retirement for the rest of his life. The court has ordered him to pay for this benefit by assigning to him half the premium required to purchase a benefit equal to 16.5 percent of his retirement pay. It is the trial court's duty "to weigh and assign the relative risks involved" in dividing retirement pay that is subject to a variety of contingencies. (*In re Marriage of Carnall, supra*, 216 Cal.App.3d at p. 1026.) In dividing the costs as it did, the trial court strove to fairly divide the benefits and the risks between the parties. Under the circumstances, we find no abuse of discretion.

### 5. Naming K.C. as Sole Beneficiary

Keith finally argues that, since federal law prohibits dividing the survivor's benefit between a surviving spouse and a former spouse (10 U.S.C. § 1450(a)(1)), the court's order deprives Keith of his separate interest in the plan. He complains that K.C. is "awarded" more than half of the maximum benefit and that the balance goes to waste, leaving Keith's current spouse with nothing to compensate for the loss of his retirement pay upon his death. It is regrettable that there is no provision in the federal law to allocate the survivor's benefit between a former spouse and a surviving spouse. But that is a practical problem unrelated to the issue at hand. As we explained above, the SBP *benefits* were not a community asset and were not divided at dissolution. K.C.'s utilization of part of the maximum SBP benefit does not affect Keith's separate property.

Keith insists that the trial court should have allowed him to name his current wife as the SBP beneficiary and permitted K.C. to impose a resulting or constructive trust upon the proceeds in an amount equal to her pro rata share. We reject the argument. This court is not in a position to determine which remedy is most appropriate to the facts of this case. (*In re Marriage of Carnall, supra*, 216 Cal.App.3d at p. 1026.)[4]

---

[4] Although we express no opinion on the question, we note that some courts have held that such an order runs afoul of 10 United States Code section 1450(i), which provides that the SBP annuity "is not assignable or subject to execution, levy, attachment, garnishment, or other

## III. *Disposition*

The postjudgment order dividing military retirement is affirmed.

Rushing, P. J., and Elia, J., concurred.

A petition for a rehearing was denied April 19, 2007, and appellant's petition for review by the Supreme Court was denied June 20, 2007, S152223.

---

legal process." (See, e.g., *King v. King* (1997) 225 Ga.App. 298, 301 [483 S.E.2d 379] [reversing trial court's imposition of constructive trust in favor of former spouse upon SBP benefits received by surviving spouse].)