[No. B195072. Second Dist., Div. Six. Feb. 28, 2008.]

In re the Marriage of HENRY and JAN DEE GIGI COOPER.
HENRY CHARLES COOPER, Appellant, v.
JAN DEE GIGI COOPER, Respondent.

COUNSEL

Linda T. Barney for Appellant.

Peter H. Mixon and Micki Winsett Gibbs for California Public Employees' Retirement System as Amicus Curiae on behalf of Appellant.

Lascher & Lascher and Alfred Vargas for Respondent.

OPINION

**YEGAN, J.**—Henry Charles Cooper appeals from a domestic relations order (DRO) entered after a judgment dissolving his marriage to Jan Dee Gigi Cooper, respondent. Appellant contends that the trial court erred in dividing survivor benefits payable by the California Public Employees' Retirement System (CalPERS).[1] We agree and reverse.[2]

### Factual and Procedural Background

Appellant was born in December 1932 and started public employment in 1963. Respondent was born in May 1946. The parties were married in

---

[1] Pursuant to Family Code section 2060, CalPERS was joined as a party to the proceedings in the trial court. We granted permission to CalPERS to file an amicus curiae brief.

[2] Respondent contends that appellant is barred from appealing from the DRO because he failed to appeal from the judgment of dissolution previously entered in 2004. This contention is without merit. The DRO is appealable as a postjudgment order under Code of Civil Procedure section 904.1, subdivision (a)(2), because the appeal from the DRO "raises issues different from those arising from the judgment itself," and because the DRO " 'affect[s] the judgment or relate[s] to it by enforcing it.' " (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651–652 [25 Cal.Rptr.2d 109, 863 P.2d 179].)

November of 1991. After 32 years of employment, appellant retired in December 1995. At that time, he started receiving retirement benefits from CalPERS.

Upon retirement, appellant selected optional settlement 2 (option 2), which "consists of the right to have a retirement allowance paid a member until his or her death and thereafter to his or her beneficiary for life." (Gov. Code, § 21456.)[3] Appellant designated respondent as his beneficiary. In exchange for the option 2 survivor benefit, appellant received a reduced retirement allowance during his lifetime. The option 2 beneficiary designation was irrevocable unless, upon dissolution of the parties' marriage, the total interest in the retirement plan were awarded to appellant. (§§ 21492, 21456.)

The parties separated in 2002 and a judgment of dissolution was entered in June of 2005. The trial court concluded that the community had acquired an interest in the CalPERS pension benefits. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 844 [126 Cal.Rptr. 633, 544 P.2d 561] ["the community owns all pension rights attributable to employment during the marriage"].) It ordered that the community interest be determined "pursuant to the time-rule" of *In re Marriage of Brown, supra*, 15 Cal.3d at pages 847–848 (hereafter the time rule).[4] As so determined, the community interest was to be "divided into two separate and distinct accounts in [appellant's] and [respondent's] names, respectively." The trial court also ordered: "Respondent shall . . . be entitled to her community property share in any survivorship benefits available under [the retirement] Plan."[5]

The parties agreed that, pursuant to the time rule, the community interest in the retirement benefits is 12.76 percent. Each party's community property share is one-half that amount: 6.38 percent.

---

[3] All statutory references are to the Government Code unless otherwise stated.

[4] "The traditional 'time rule' provides that whenever credited time of service is a substantial factor in determining the benefit payable under a defined benefit plan, the extent to which that service was provided during the marriage in comparison to the total duration of service will alone determine the community share. The community share is thus derived per a purely mathematical formula under which time or years of service is the determining factor. [Citations.] According to the time rule, the community interest is that fraction of the retirement benefits, the numerator of which represents the length of service during marriage and the denominator of which represents the total length of service by the employee spouse. [Citation.]" (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 509, fn. 3 [66 Cal.Rptr.3d 87].)

[5] This recital shows that, at least originally, the trial court recognized that the "survivorship benefit" was a community property asset. This recital is at variance with the trial court's subsequent DRO.

In March of 2006, respondent filed an ex parte application for an order to show cause why appellant should not be compelled to sign a DRO dividing the parties' community property interest in the retirement benefits. With the exception of the option 2 survivor benefit, the proposed DRO divided the community property interest pursuant to the time rule. As CalPERS points out in its amicus curiae brief, "[t]he [proposed] DRO did not [expressly] address the optional settlement 2 [survivor] benefit."

Respondent had been designated the sole beneficiary of the option 2 survivor benefit, and this designation was irrevocable because the court had not awarded appellant the total interest in the retirement plan. (§§ 21492, 21456.) Respondent's proposed DRO, therefore, awarded her the entirety of the parties' interest in the option 2 survivor benefit.

Appellant filed opposition to the proposed DRO. He requested that the trial court order a " 'buy-out' [by appellant] of Respondent's community property interest in [appellant's] CalPERS pension." Appellant offered to pay respondent "a lump sum equal to the present value of her community property share." He presented calculations showing the present value to be approximately $33,900.

Appellant complained that the proposed DRO would provide respondent "a windfall if [appellant] were to predecease her" because the survivor benefit then payable to her would far exceed her 6.38 percent community property share of the retirement benefits. Appellant presented calculations showing that, if respondent were awarded the entire option 2 survivor benefit, pursuant to the proposed DRO, the present value of her interest in the retirement plan would be $208,400.

Appellant noted, "The designation of Respondent as the Option 2 Beneficiary is irrevocable—UNLESS [APPELLANT] IS AWARDED 100% OF HIS CALPERS PENSION." Thus, if the court ordered a buyout of respondent's community property share, appellant would be able "to change his beneficiary designation or even revoke the Option 2 election altogether."

In May of 2006, the trial court denied appellant's request for a "buy out." It approved respondent's proposed DRO. The court stated that the DRO's division of the retirement benefits "would provide respondent her time-rule share while [appellant] is alive, but would also provide her a full survivor's share upon the death of [appellant]. This survivor's share would be significantly larger than her time-rule share."

The trial court reasoned as follows: "The parties agree that the survivor's option when exercised in 1995 is irrevocable. The parties provide no evidence that if the election had not been made, there would be benefits

available to anyone after [appellant's] death. As such, there is no one who has a colorable claim to any [CalPERS] benefits after [appellant's] death. . . . Here, the only evidence is that the sole beneficiary under any circumstance is respondent. A windfall would result to the pension plan if respondent were removed as a beneficiary based solely on her present status as a former spouse. The actuarial calculation involved in the survivor option presumably took place at the time the parties applied for the survivor benefit, and the pension plan agreed to pay it."

The trial court also reasoned that, by selecting the option 2 survivor benefit in 1995, appellant had "conferred a tangible and vested benefit on respondent similar to signing an annuity contract. . . . There is no convincing authority presented to require the court to take it away from her."

Appellant filed a notice of motion for reconsideration arguing that CalPERS would not receive a windfall if respondent were removed as a beneficiary. In these circumstances appellant would be able to select someone else, such as his daughter, to be the beneficiary, or he could choose a different option. The trial court denied the motion for reconsideration.

### Revocation of Beneficiary Designation

■ "The designation of a beneficiary under optional settlement[] 2 . . . is irrevocable from the time of the first payment on account of any retirement allowance." (§ 21492.) But "[i]f the marriage of a member is dissolved . . . and the judgment dividing the community property awards the total interest in [the retirement] system to the member, . . . the member's allowance shall be adjusted . . . to reflect the benefit that would have been paid had the member not selected an optional settlement." (§ 21456.) In these circumstances, the member may select a new optional settlement and "name a different beneficiary." (§ 21462.) Thus, after the first payment of a retirement allowance, the beneficiary designation under option 2 is irrevocable unless in the division of the community property the court awards to the member spouse (here appellant) the total interest in the retirement plan.

### Division of Retirement Benefits

■ "Upon dissolution of a marriage, the trial court has broad discretion in the division of the community property interest in a spouse's pension rights and can exercise its discretion in either of two ways. The trial court may either determine the present value of community property rights and award them to one spouse with offsetting community or other assets to the other (commonly called the cash out method), or it may divide the community interest in kind between the spouses, reserving jurisdiction to supervise

future payments to each spouse. [Citation.] . . . [T]he trial 'court retains the discretion to divide the community assets in any fashion which complies with the provisions of Civil Code section 4800 [now Fam. Code, § 2550].' [Citations.]" (*In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 749 [214 Cal.Rptr. 661]; see also *In re Marriage of Carnall* (1989) 216 Cal.App.3d 1010, 1024–1026 [265 Cal.Rptr. 271].)

■ Family Code section 2550 provides that, except as otherwise agreed by the parties or specifically provided by statute, the trial court must "divide the community estate of the parties equally." This equal division requirement applies to retirement plan survivor benefits. Family Code section 2610, subdivision (a), provides: "Except as provided in subdivision (b), the court shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits . . . ."
■ Subdivision (b) of section 2610 provides that the court shall not make any order that increases the amount of benefits payable by the retirement plan or that requires the payment of benefits before the member retires unless the plan allows such payments. Section 2610, subdivision (a)(1), provides that the court shall "[o]rder the disposition of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 2550."

Generally speaking, a trial court's division of the community interest in retirement rights " 'will not be interfered with on appeal unless an abuse of discretion is shown. The criterion governing judicial action is reasonableness under the circumstances. The method adopted may vary with the facts in each case.' [Citation.]" (*In re Marriage of Smith* (2007) 148 Cal.App.4th 1115, 1124 [56 Cal.Rptr.3d 341].) "Whatever the method that it may use, however, the superior court must arrive at a result that is 'reasonable and fairly representative of the relative contributions of the community and separate estates.' [Citation.]" (*In re Marriage of Lehman* (1998) 18 Cal.4th 169, 187 [74 Cal.Rptr.2d 825, 955 P.2d 451].) But, except as otherwise agreed by the parties or specifically provided by statute, no trial court has discretion to divide the community estate unequally and if it does so, the trial court errs as a matter of law. (Fam. Code, § 2550.)

### *The Trial Court Erred as a Matter of Law in Allocating to Respondent the Entirety of the Option 2 Survivor Benefit*

Even though respondent was designated as the option 2 survivor beneficiary in 1995, appellant had a community property interest in the option 2 survivor benefit. (See *ante,* p. 578.) The DRO allocated to respondent the entirety of this benefit without requiring an offsetting payment to appellant.

By this allocation, the trial court did not "divide the community estate of the parties equally." (Fam. Code, § 2550.)

█ The trial court erroneously reasoned that respondent was entitled to the entirety of the option 2 survivor benefit because, by designating her as the option 2 beneficiary when appellant retired in 1995, he had "conferred a tangible and vested benefit on respondent similar to signing an annuity contract." But there is no evidence that in 1995 appellant intended to forever relinquish his community property interest in the option 2 survivor benefit, regardless of whether the parties legally separated or divorced. The trial court's ruling is tantamount to a finding that appellant made an irrevocable and outright gift of a community property asset to respondent. (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 818 [166 Cal.Rptr. 853, 614 P.2d 285].) But here there is no evidence of a written transmutation of community property to separate property. (Fam. Code, § 852, subd. (a).)

The trial court also erroneously reasoned that "[a] windfall would result to the pension plan if respondent were removed as a beneficiary" because "[t]he actuarial calculation involved in the survivor option presumably took place at the time the parties applied for the survivor benefit, and the pension plan agreed to pay it." As CalPERS explains in its amicus curiae brief, no such windfall would result if the total interest in the retirement plan were awarded to appellant, with an offsetting payment to respondent to compensate her for the loss of her community property interest. In these circumstances, appellant's retirement allowance would be increased "to reflect the benefit that would have been paid had [he] not selected an optional settlement." (§ 21456.) Appellant would then be able to select a new optional settlement and "name a different beneficiary." (§ 21462.)

Accordingly, the trial court erred as a matter of law by allocating to respondent the entirety of the option 2 survivor benefit. The discretion exercised upon a false premise must be reversed.

### Method for Redividing Retirement Benefits

The trial court, not an appellate court, is normally the proper forum to determine the method for dividing retirement benefits. However, based on the record before us, we conclude that discretion here may reasonably be exercised in only one way: by ordering appellant to buy out respondent's community property share of the retirement benefits including the survivor benefit. The buyout will require the court to calculate the present value of respondent's 6.38 percent community property share. Respondent is entitled to no less and no more. Only a buyout will enable appellant to revoke his designation of respondent as the option 2 beneficiary.

*Disposition*

The DRO is reversed, and the matter is remanded to the trial court with directions to redivide the CalPERS retirement benefits pursuant to the views expressed in this opinion. The parties shall bear their own costs and attorney fees on appeal.

Gilbert, P. J., and Coffee, J., concurred.

A petition for a rehearing was denied March 26, 2008, and respondent's petition for review by the Supreme Court was denied June 11, 2008, S162444.