Filed 10/7/13  Marriage of  Berthelsen CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of PAMELA L. and GENE BERTHELSEN. | |
| PAMELA LYNCH,<br><br>Respondent,<br><br>v.<br><br>CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM,<br><br>Appellant;<br><br>DONNA SPRINGER,<br><br>Respondent. | C071426<br><br>(Super. Ct. No. FL796772) |

The California Public Employees' Retirement System (PERS) appeals a postjudgment order in a marital dissolution action.  The trial court ordered PERS to pay

Pamela Lynch her pro rata community property share of monthly death benefits following the death of her ex-husband Gene Berthelsen, and to make those payments for the duration of Lynch's lifetime. PERS contends it should only be required to make such payments to Lynch during the lifetime of Berthelsen's second wife Donna Springer, because Springer was Berthelsen's named beneficiary and the duration of death benefits is governed by Government Code section 21456, which establishes the right to have a retirement allowance paid to a member until his death and thereafter to his "beneficiary for life."

We conclude that despite the language in Government Code section 21456, the trial court had broad discretion under the Family Code to fashion an equitable apportionment of community property interests. Because the parties did not request a statement of decision, we presume implied findings necessary to support the order. On this particular record, we cannot say that the trial court's order for payment to Lynch for her lifetime was unreasonable or an abuse of discretion.

We will affirm the trial court's order. In addition, in oral argument, both Lynch and PERS asked us to order that if Springer survives Lynch, Lynch's death benefit payments shall be paid to Lynch's appropriate heirs from the date of Lynch's death until the date of Springer's death. We will so order.

BACKGROUND

Gene Berthelsen married Pamela Lynch in September 1960. In November 1965 he qualified for PERS benefits based on his employment. Lynch and Berthelsen separated in 1983 and divorced in 1985 pursuant to a judgment incorporating a marital settlement agreement (MSA).

Among other things, the MSA provided: "Husband and Wife agree that there is a community interest in Husband's [PERS] benefits. Pursuant to Civil Code §§ 4363.1 - 4363.3 PERS has been joined as a party to this proceeding. Husband and Wife hereby consent to an order of court directing PERS to pay directly to Wife that percentage of any

2

payment allocable to her community interest calculated as follows: One-half of the product obtained by multiplying the amount of each payment by the ratio of the months of [Husband]'s employment during the marriage and prior to separation, over the total number of months of [Husband]'s employment. Wife shall be entitled to receive payments at the earliest possible date the plan becomes vested and matured. Wife's right to receive payments shall not be dependent upon Husband's actual date of retirement. The Court shall reserve jurisdiction to enforce [Wife]'s right to receive such payments from PERS."

The judgment of dissolution similarly stated: "[PERS] shall pay directly to [Wife] that percentage of any payment allocable to her community interest calculated as set forth [in the MSA], attached hereto. The court hereby specifically reserves jurisdiction over all issues concerning such retirement plan."

Berthelsen retired in May 2003. Prior to retirement, he selected a retirement benefit payout option that provided a monthly benefit to himself during his lifetime and a continuing monthly benefit of approximately $4,000 per month to his designated beneficiary (his second wife Donna Springer) for her lifetime.[1]

At the time of his retirement, Berthelsen had a total of 450 months of employment with PERS benefits, 217 of which occurred during his marriage to Lynch. The community property share of Berthelsen's PERS benefits is 48.22 percent, so one-half of it -- Lynch's share -- is 24.11 percent. One day before the effective date of Berthelsen's retirement, PERS notified Lynch that her share of Berthelsen's retirement benefits would cease upon his death. Upon Berthelsen's retirement, Lynch began to receive her share of Berthelsen's monthly retirement PERS allowance, approximately $1,300.

---

[1] The parties describe Berthelsen's selection among available death benefit options as the selection of "Option 4 (2W+1)," a combination option which incorporates some elements of "Option settlement 2" created by Government Code section 21456.

3

Berthelsen died in April 2011.  PERS notified Lynch that "presently, there are no death benefits payable to you.  The court orders from your divorce in 1985 did not require Mr. Berthelsen to elect to provide an option death benefit for you, nor did the court orders specifically award you a community property interest in the death benefits that are payable based upon the retirement election made by Mr. Berthelsen when he retired in 2003."  However, PERS informed Lynch that the death benefits payable to Springer are partly community property, and a court could order that Lynch receive an interest in the death benefit, not to exceed the life of Donna Springer.  PERS also told Lynch that Berthelsen's PERS benefits included an employee-funded monthly survivor continuance benefit that would all be paid to Springer, Berthelsen's surviving spouse.  PERS did not indicate that this benefit had been partly acquired with community property and could be ordered divided by the court.

Lynch filed a petition in family court seeking an order dividing the community property interest in Berthelsen's death benefits and ordering payment to Lynch of her pro rata community property share of the survivor continuance benefit.  Springer and PERS were joined in the petition proceeding.  (Fam. Code, § 2060; Cal. Rules of Court, rule 5.24.)

At a hearing on October 5, 2011, the trial court ordered PERS to pay Lynch her community property share of the death benefits, or $978.33 per month, plus her share of the cost of living adjustments on the benefits.  PERS did not challenge that order.

The trial court then set another hearing on the remaining issues raised in Lynch's petition:  (1) that PERS pay to Lynch her portion of monthly death benefits for the duration of Lynch's lifetime, rather than for Springer's lifetime, and (2) that Lynch be awarded 24.11 percent of the monthly survivor continuance benefit otherwise payable to Springer (an additional $392.86 per month) plus cost of living adjustments.

In support of her petition, Lynch argued that Berthelsen's survivor continuance benefit was a "missed asset" in the parties' divorce judgment, which the trial court could

4

later divide pursuant to Family Code section 2610. Family Code section 2610 directs the trial court in pertinent part to make "whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits" and provides that the trial court may "[o]rder the disposition of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 2550." (Fam. Code, § 2610, subd. (a)(1).) Lynch also argued that the trial court should order PERS to pay Lynch her portion of Berthelsen's death benefit for the duration of her lifetime, because PERS violated its own policies and applicable law when it allowed Berthelsen to choose his second wife, Springer, to receive all death benefits.

At a hearing on January 11, 2012, the trial court ordered PERS to pay Lynch 24.11 percent of the monthly survivor continuance benefit, or $392.86, plus cost of living adjustments. PERS did not challenge that order.

PERS instead opposed Lynch's request for payment of her portion of Berthelsen's death benefit for her lifetime. PERS argued that death benefits were legally payable only for the period selected by Berthelsen upon his retirement. Because Berthelsen selected payments after his death to Springer "for life" (Gov. Code, § 21456), PERS said Springer's life can be the only measuring time period. PERS acknowledged that Berthelsen's selection effectively reduced Lynch's community property share of the total retirement allowance "to help fund the cost of providing the Option 4 benefit" to Springer and Lynch for the duration of Springer's lifetime.[2]

Lynch responded that a reduction in her community property share of payouts from Berthelsen's retirement plan should have provided death benefits for Lynch's lifetime, not Springer's lifetime. Lynch added that because PERS was aware of the 1985

_____

[2] At the time of these proceedings, Lynch was 73 years old, and Springer was 62.

divorce decree, it erred in allowing Berthelsen to select a retirement option designating his second wife as the beneficiary of his death benefits without a court order.

Following an unreported hearing, the trial court ordered PERS to pay Lynch her "share of the death benefits arising from Gene Berthelsen's pension . . . for her lifetime." No one requested a statement of decision.

STANDARD OF REVIEW

The parties agree that we independently review legal issues, including the proper interpretation of statutes.[3]  They also agree that we review factual findings for substantial evidence.  Lynch adds, however, that we must defer to the trial court's implied findings in support of its orders because neither party requested a statement of decision.  PERS counters that we should apply the substantial evidence test to the findings of the PERS board.

We agree with Lynch that absent a statement of decision, we must presume the trial court made all factual findings necessary to support its orders.  (See, e.g., *Fladeboe v. American Isuzu Motors Inc*. (2007) 150 Cal.App.4th 42, 58-59, and cases cited therein.)

In addition, the trial court had broad discretion in fashioning an equitable apportionment of community property interests.  (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 514.)  " 'As a general rule, in selecting a method to effect

---

[3] PERS asserts that the PERS board's interpretation of the public employees retirement law must be accorded great weight unless clearly erroneous.  It is true that where PERS has issued an administrative decision, we consider the facts in the light most favorable to the PERS board's decision and resolve conflicts in its favor.  (*Prentice v. Board of Administration* (2007) 157 Cal.App.4th 983, 988-989.)  Moreover, an administrative agency's consistent and long-standing interpretation of a statute governing its powers and responsibilities is "accorded great weight."  (*Mason v. Retirement Board* (2003) 111 Cal.App.4th 1221, 1228.)  But here, PERS did not issue an administrative decision, engage in quasi-legislative rulemaking, or render a ruling of general application.

6

distribution of the community interest in retirement rights the court acts in the exercise of judicial discretion and its determination respecting such will not be interfered with on appeal unless an abuse of discretion is shown.  The criterion governing judicial action is reasonableness under the circumstances.' "  (*In re Marriage of Smith* (2007) 148 Cal.App.4th 1115, 1124; see *In re Marriage of Cooper* (2008) 160 Cal.App.4th 574, 580.)

## DISCUSSION

PERS contends it should only be required to pay Lynch her share of the death benefit during Springer's lifetime.[4]  PERS argues Lynch's share is only payable for the lifetime of Berthelsen's designated beneficiary because the duration of death benefits is governed by Government Code section 21456, which establishes the right to have a retirement allowance paid to a member until his death and thereafter to his beneficiary for life.  PERS asserts "[t]here is no exception to provide a different duration of payments to any beneficiary, including ex-spouses."

But because this dispute arises from the division of community property interests, the Family Code also governs our analysis.  Family Code section 2550 provides:  "Except upon the written agreement of the parties, or on oral stipulation of the parties in open court, or as otherwise provided in this division, in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later

---

[4] PERS does not challenge the orders requiring it to pay Lynch a pro rata community property share of Berthelsen's monthly death benefits or of his survivor continuance benefit.  Accordingly, we do not address the assertions in the PERS appellate briefs that Lynch failed to respond to the warning by PERS prior to Berthelsen's retirement that her benefits would end with his death, or that Lynch is now seeking to retroactively change Berthelsen's beneficiary designation.

7

time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally."

Regarding retirement plans, Family Code section 2610, subdivision (a) specifies that, with exceptions not relevant here,[5] the trial court "shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits . . . ." Family Code section 2610, subdivision (a)(1) says this includes, but is not limited to, ordering "the disposition of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 2550."

In applying these Family Code provisions, a trial court is "not bound by a particular method of allocation. Rather, the court should divide the property ' "by whatever method or formula will 'achieve substantial justice between the parties.' " [Citation.]' [Citation.]" (*In re Marriage of Gray, supra,* 155 Cal.App.4th at p. 514; *In re Marriage of Sonne* (2010) 185 Cal.App.4th 1564, 1572-1573.)

In determining whether Family Code section 2610 controls over Government Code section 21456 in this context, the case of *In re Marriage of Cooper, supra*, 160 Cal.App.4th 574, is instructive. In that case the husband retired during his marriage to the wife and elected to have a retirement allowance paid until his death and thereafter to his beneficiary (the wife) for life, pursuant to Government Code section 21456. (*In re Marriage of Cooper, supra*, at p. 577.) When husband and wife divorced after husband retired, the trial court determined the community had an interest in husband's retirement plan and ordered it divided. (*Id.* at pp. 577-578.) Because the wife's beneficiary

---

[5] Although subdivision (b)(1) of Family Code section 2610 prevents the trial court from making an order that increases the amount of benefits payable by the retirement plan, PERS does not contend the trial court's order in this case increases the total amount of benefits PERS will eventually pay.

allowance could be significantly larger than the present value of her community property share, husband sought a "buy out" of wife's community interest in his retirement. (*Id.* at pp. 578-579) But the trial court denied the request on the ground that husband's beneficiary designation under Government Code section 21456 was irrevocable. (*Ibid.*)

The Court of Appeal reversed, concluding that the trial court's adherence to Government Code section 21456 resulted in a failure to divide the community assets equally as required by Family Code section 2550. The Court of Appeal directed the trial court to order husband to buy out wife's community property share of the retirement benefits in order to effect a fair division of the retirement asset. (*In re Marriage of Cooper, supra*, 160 Cal.App.4th at pp. 580-581.)

Here, despite the language in Government Code section 21456, the trial court determined that an equal division of community assets required an order for payment of death benefits to Lynch for her lifetime. PERS does not argue that the trial court failed to effect an equal distribution of the community's interest in Berthelsen's retirement benefits, or that the trial court failed to achieve substantial justice between the parties. (Cf. *In re Marriage of Gray, supra*, 155 Cal.App.4th at p. 514.)

Because there was no statement of decision, we presume the trial court made all factual findings necessary to support the order, such as the implied finding that payments for Lynch's lifetime were necessary or appropriate to equalize the community interests in Berthelsen's death benefits. Moreover, PERS conceded in oral argument that the MSA authorized the trial court to order pro rata death benefit payments to Lynch; PERS also conceded that Springer is younger than Lynch, and that the calculation of death benefit payments to Lynch was made based on Springer's lifetime. On this particular record, we

9

cannot say that the trial court's order for payment to Lynch for her lifetime was unreasonable or an abuse of discretion.

## DISPOSITION

The trial court's order is affirmed.  If Springer survives Lynch, Lynch's death benefit payments shall be paid to Lynch's appropriate heirs from the date of Lynch's death until the date of Springer's death.  Lynch is awarded her costs on appeal.  (Cal. Rules of Court, rule 8.278 (a)(1),(2).)


        MAURO        , J.

We concur:


        ROBIE        , Acting P. J.


        DUARTE        , J.