Filed 7/22/16  Marriage of Moosa CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Marriage of ROZINA MOOSA and NAUSHAD MOOSA. | B261878 |
| | (Los Angeles County Super. Ct. No. BD532619) |
| ROZINA MOOSA,<br><br>        Respondent,<br><br>        v.<br><br>NAUSHAD MOOSA,<br><br>        Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michelle Williams Court, Judge.  Affirmed.

Pius Joseph for Appellant.

Paul Kujawsky for Respondent.

This appeal stems from a post-judgment order directing the clerk of court to sign a quitclaim deed. Appellant Naushad Moosa (Moosa) was awarded a home under a dissolution judgment incorporating the parties' marital settlement agreement. Pursuant to that agreement, he agreed to use his best efforts to remove respondent Rozina Moosa's name from the encumbrances on the property and expressed an intent to sell the home. Rozina Moosa, to whom we refer by her current chosen last name of Gulwani, promptly executed a quitclaim deed transferring title of the home to Moosa, but Moosa was unsuccessful in removing her name from the encumbrances and selling the home.

Nearly two years after the court entered judgment on the marital settlement agreement, Gulwani asked the court to enforce the terms of the judgment and order the home sold. The court entered an order directing that the home be forthwith listed and sold by Gulwani. The court denied Moosa's motion for reconsideration. Moosa did not appeal these orders, but later refused Gulwani's request that he sign a quitclaim deed to the home. Gulwani asked the court to appoint the clerk to sign the quitclaim deed on Moosa's behalf. The court granted Gulwani's request, and Moosa timely appealed that order.

Moosa contends the court lacked jurisdiction to consider Gulwani's request to appoint the clerk to sign the quitclaim deed because it sought to override the terms of the parties' marital settlement agreement awarding him the home. He further contends that the marital settlement agreement did not authorize the court to order sale of the property in any event. We do not find these arguments persuasive. The marital settlement agreement expressly vested the court with continuing jurisdiction over the parties' property, authorized it to modify the settlement, and authorized it to appoint the clerk to execute documents upon a party's refusal. Moreover, the order from which Moosa appeals did nothing more than effectuate a previous order Moosa failed to timely appeal. We accordingly affirm the order of the trial court.

2

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    *Marriage and Dissolution*

Gulwani and Moosa married on February 13, 1999.  During the marriage, Gulwani purchased a $640,000 home in Culver City, referred to by the parties as the "Berryman Property."  Moosa executed and recorded an interspousal transfer deed to transfer title to the home to Gulwani as her sole and separate property.  Gulwani and Moosa resided in the home with their two minor children.

Gulwani petitioned for dissolution of the marriage in September 2010.  The trial court entered a judgment of dissolution as to status only on June 1, 2011.  The parties, who at all relevant times were represented by counsel, subsequently engaged in settlement negotiations supervised by superior court Judge Mark Juhas.

### B.    *Marital Settlement Agreement and Judgment*

Judge Juhas held a hearing on January 13, 2012 to address the terms of the parties' proposed marital settlement agreement.  As is relevant here, the parties agreed that Moosa would receive the Berryman Property as his sole and separate property.  To facilitate the award, Gulwani agreed to execute a quitclaim deed in favor of Moosa.  Because Gulwani had fallen behind on the mortgage payments, she also agreed to pay Moosa ten monthly payments of $2,500 to reimburse him for approximately one-half of the total arrearages on the home.  Moosa, who previously had requested that the court sell the home and now planned to sell the home himself, was to be responsible for removing Gulwani's name from the mortgage and other encumbrances, for making subsequent mortgage payments, and for paying the property taxes in a timely fashion.[1]

---

[1] On January 30, 2012, after the hearing but before the agreement was incorporated into a judgment, Gulwani executed a quitclaim deed in favor of Moosa. Approximately one week later, on February 10, 2012, Moosa signed a grant deed transferring the property to one Joey Cinco.  Cinco in turn initiated a bankruptcy proceeding three days later, presumably halting foreclosure proceedings on the home. Cinco did not record the deed, and his bankruptcy was dismissed on May 22, 2012, two weeks after the parties' marital settlement agreement awarding the home to Moosa was reduced to judgment.

The parties eventually reduced the marital settlement agreement to writing, and the trial court entered a judgment incorporating the agreement on May 8, 2012. The judgment provided in pertinent part that Moosa was awarded, as his sole and separate property: "All right, title and interest in the real property located at and commonly known as 5192 Berryman Avenue, Culver City, California 90230, subject to the mortgage secured by a first Deed of Trust in favor of Bank of America ('BofA'), a home equity line of credit in favor of RoundPoint Mortgage Servicing Corporation ('RoundPoint'), and any and all other encumbrances, liens, taxes, or other debts and obligations thereon, from which Respondent [Moosa] shall indemnify and defend Petitioner [Gulwani] and hold Petitioner harmless, including as to attorney fees and costs . . . .

"Respondent is ordered to use best efforts to have Petitioner's name forthwith removed from all encumbrances associated with the property, including, but not limited to, the mortgage currently existing on the parties' former family residence. Respondent hereby represents he is in the process of attempting to refinance or otherwise modify the existing loan(s) to remove Petitioner's name from the same. Respondent shall forthwith be liable for repayment of the above-referenced mortgage loans in favor of BofA and RoundPoint. Petitioner shall fully cooperate with said efforts to ensure the goal of removing her from responsibility for both loans so that this can be accomplished as quickly as possible and in the manner which minimizes hardship or inconvenience for Respondent as much as possible.

"Respondent shall attempt to cure the existing default on the property from the mortgage currently in arrears, and shall be solely responsible to maintain the property as current for each month thereafter, and to maintain the property taxes as timely paid in full. Respondent shall indemnify and hold Petitioner harmless from any harm resulting in his failure to maintain the encumbrances associated with the property as current, and/or failure to maintain the property taxes as timely paid in full. In that regard, commencing March 15, 2012, Petitioner shall provide directly to Respondent the sum of $2,500 per month until the total sum of $25,000 has been paid in full. Said sum expressly represents

4

reimbursement for approximately one-half of the amount of arrears owed on the residence due to Petitioner's failure to make timely payment of the mortgage.

"Petitioner represents that she has already provided to Respondent an executed and notarized Quitclaim Deed transferring title of the aforesaid property into Respondent's sole name.

"Petitioner shall have the right to remain in the parties' former family residence until, and including, February 15, 2012, or any other date thereafter to which the parties agree. Petitioner shall thereafter vacate the premises, and provide to Respondent the keys, and password information, to the Respondent. [Sic] Upon written notice to Petitioner, Respondent may enter the premises on a mutually agreeable date prior to the date on which the parties' [sic] agree Petitioner shall vacate (February 15, 2012, or mutually agreed upon date thereafter), for the sole purpose of making necessary repairs to prepare the residence for sale.

"It is the understanding of the parties, and the intent of Respondent, that the property shall be listed for sale and sold."

The judgment ordered the parties "to cooperate fully to avoid court appearances and proceedings otherwise unnecessary." It further ordered the parties "to make, execute and deliver any and all instruments and documents, and to perform any and all other acts, necessary or convenient to carry out the terms or intent of this Judgment, including, but not limited to, all documents transferring to the parties their respective interests in the foregoing real estate, real estate investments, other property, the foregoing deed of trust, the foregoing amended income tax returns, and otherwise." The parties agreed that if either of them failed to comply with these provisions, "on *ex parte* notice to a court of competent jurisdiction with any required notice of application to the other party, the Court shall appoint the clerk or assistant clerk of the court to execute any and all documents for and on behalf of the party failing or refusing to execute any such document, and/or make such other orders as are necessary and convenient to carry out the terms or intent of this Judgment."

5

The court expressly reserved "jurisdiction over any and all property to be divided pursuant to any provision of this Judgment, and over any and all other executory provisions of this Judgment." The parties agreed that the judgment could only be altered, amended, modified, or terminated by a jointly signed writing approved by the court "or by an order of the Court regarding issues over which jurisdiction is reserved by the Court or orders which are subject to later modification."

## C.     *Gulwani's First Ex Parte Request*

On March 21, 2014, approximately two years after the judgment was entered, Gulwani requested an order to enforce the terms of the judgment, order the Berryman Property sold, and award her attorneys fees, costs, and sanctions against Moosa. In her accompanying declaration, Gulwani stated that she had complied with the terms of the judgment by timely executing a quitclaim deed to the home, moving out of the home, and giving Moosa one check for $2,500. She further stated that after she learned Moosa had cashed that check but had not applied it to the mortgage, she "ceased providing Respondent with that money."

According to Gulwani's declaration, she subsequently "determined that since January 2012 and to date, there have been no payments made toward the mortgages (notwithstanding the receipt of $2,500 from [her] for payment of the delinquent mortgage), no re-finance or loan modification removing [her] name, no payments made for property taxes, nor any listing of the property for sale." Gulwani represented that her name "remains the only name on the loans," and that her credit rating "continues to suffer as a direct result." She requested that the court order Moosa to vacate the home and release the keys, security codes, and garage door opener to her, and to "forthwith have the Berryman Property listed for sale and sold."

Moosa filed an opposition to Gulwani's request on April 22, 2014. According to his accompanying declaration, in March 2012 he "communicated with several institutions for loan [sic], but none was willing to lend." He then listed the Berryman Property for

6

sale in late March 2012.[2]  Moosa stated that although he had spent $27,000 making repairs to the home, he had been unable to sell it due to its "dilapidated conditions," including "leaking bathrooms, damaged ceilings, damaged wood floors, damaged rain gutters, grills missing on the stair rail, damaged pool with burnt motor, burns around the barbecue structure, gas leaks, roof leaks, damaged appliances, and roach and rodent infestation."  None of these conditions prevented him from living in the home with his elderly parents, however.

Moosa further stated that the home's mortgage lender, Bank of America, approved his request for a short sale in August 2012.  According to Moosa, he found a willing buyer for the home, at a price of $450,000, and "started the document process," but ultimately removed the home from the market in February 2013 due to delays occasioned by a new loan servicer.

Moosa relisted the property on or about March 28, 2014, a week after Gulwani filed her ex parte request, for a price of $529,000.  Shortly thereafter, on April 3, 2014, a buyer named Yousef Haroon made an offer for $575,000.  Moosa declared that to complete the sale, he "requires for Petitioner to execute a durable power of attorney for the trust deed of Berryman property [sic] and a supplemental declaration because Petitioner is the sole person named on the mortgage."  Moosa's counsel sent the durable power of attorney to Gulwani's counsel on April 8, 2014.  Gulwani's counsel responded on April 14, 2014 that Gulwani would not sign the document, which by its terms vested in Moosa not only "all powers of an absolute owner over [her] assets and liabilities," but also the right to receive all of her medical information and records "regarding any past, present or future medical or mental health condition."  Although Gulwani's counsel invited Moosa to "provide proposed reasonable suggestions in an attempt to resolve these issues," there is no indication in the record that Moosa accepted this invitation or made

---

[2] Moosa did not mention the intervening "transfer" of the property to Joey Cinco. He advised the court only that he "extended the auction date" on the Berryman Property "through counsel."

any attempt to negotiate for a power of attorney that was narrower in scope. It is unclear what came of Haroon's offer to purchase the home.

The trial court, now presided over by Judge Michelle Williams Court, held a hearing on Gulwani's request on May 5, 2014. No transcript of the hearing is in the record, though the court's minute order indicates that a reporter was present. The court granted Gulwani's request for "an order to enforce the terms of the May 8, 2012 judgment and order that the real property be sold and other related orders," but denied her request for fees and sanctions. The court ordered Gulwani to prepare an order after hearing.

According to the order after hearing, which the court entered on June 18, 2014, the court found that the May 8, 2012 judgment "reserves jurisdiction for the Court to make an Order that the real property located at 5192 Berryman Avenue, Culver City, California 90230 ("Berryman Property") be sold." The court ordered "that the Berryman property be forthwith listed for sale and sold by Petitioner," Gulwani. The court also ordered Moosa to "vacate the property, and release the key(s), security code and garage door opener to Petitioner and/or her agent, on or before May 25, 2014." The court further stated that it retained jurisdiction over the Berryman Property, "so that in the event Respondent fails to cooperate with the listing and sale of the property by Petitioner, on *ex parte* notice with any required notice being provided by Petitioner to Respondent, the Court shall appoint the clerk or assistant clerk of the court to execute any and all documents for and on behalf of Respondent who fails or refuses to execute any such document, and/or to make any such other orders as are necessary or convenient to carry out the Court's orders." The order by its terms was "effective upon pronouncement in open Court on May 5, 2014." We accordingly refer to it as "the May 5, 2014 order."

**D.**    *Moosa's Motion for Reconsideration and Ex Parte Request*

On May 14, 2014, Moosa filed a motion for reconsideration. In his accompanying memorandum of points and authorities, he alleged that "new facts and circumstances have surfaced surrounding these issues." Namely, he stated that he recently "obtained a private lender who is providing him with the funds to pay off the current mortgage on the

8

Berryman Property" and had placed $750,000 in escrow. According to the documents Moosa submitted along with his memorandum, a trust fund named the Y Y Haroon Trust wired $786,000 (not $750,000) into escrow on May 15, 2014, the day *after* Moosa filed the documents with the court. On May 19, 2014, Moosa also filed an ex parte request for an order either (1) directing Gulwani to execute all documents to effectuate payoff of the encumbrances with his recently obtained escrow funds, (2) staying the May 5, 2014 order, or (3) giving him (and his parents) additional time to vacate the Berryman Property. The court summarily denied Moosa's ex parte request the same day.

Gulwani opposed Moosa's motion for reconsideration. In her June 4, 2014 filing, she challenged the legitimacy of Moosa's evidence concerning the personal loan and wire transfer. She also argued that the motion should be denied because, given the speed with which Moosa secured the purported personal loan, "there is no reason to believe that Respondent could not have taken efforts to obtain the funds 48 hours earlier, and certainly, from the time he was served with Petitioner's Request for Order." In his reply, Moosa argued that the inconsistencies in the wire transfer documents were merely clerical errors. He further argued, circularly, that "Petitioner neglects the fact that Respondent could not have obtained a private loan before the grant of Petitioner's Request for Order because it didn't happen until after the grant of Petitioner's Request for Order."

The trial court heard and denied Moosa's motion for reconsideration on June 17, 2014. It ruled that Moosa "has not met his burden of proof or shown there are different facts and/or circumstances to change the court's prior order." The court further ruled that all of its existing orders were "to remain in full force and effect, including the court's prior order granting the transfer of real property from the Respondent to the Petitioner and its sale." Moosa did not appeal either the May 5, 2014 order or the denial of his motion for reconsideration.

### E. *Gulwani's Second Ex Parte Request*

On December 8, 2014, Gulwani filed an ex parte request for an order appointing the clerk to execute a quitclaim deed on Moosa's behalf "to facilitate transfer of title from

9

Respondent to Petitioner as a bona fide purchaser." In her accompanying declaration, Gulwani stated that she attempted to list the Berryman Property for sale immediately following the court's May 5, 2014 order, but could not do so because Moosa's realtor refused to release the property from a previous short sale listing. The realtor released the property in June 2014, at which point Gulwani contacted the bank and learned that the bank was in the process of auctioning the home. The bank had the home appraised twice, once in May 2014 and once in August 2014. The May appraisal anticipated a sale price of $687,585; the August appraisal estimated the home's value at "$560,000 to $600,000." The amount owing on the mortgage and other encumbrances was approximately $750,000.

Gulwani further declared that the bank advised her that she could "re-purchase the property as a bona fide purchaser solely responsible for the loan by applying for a loan modification." Accordingly, rather than listing the Berryman Property for sale on the open market, she applied for and was granted a loan modification. Gulwani thus became a bona fide purchaser of the home and made her first new mortgage payment of $3,283.75 on the Berryman Property on November 24, 2014. Gulwani informed Moosa's attorney of the arrangement by letter dated November 21, 2014 and requested that Moosa execute a quitclaim deed to complete the sale of the property.

Moosa's attorney responded on December 1, 2014 with a letter questioning Gulwani's rejection of his "previous move" to pay off the encumbrances with the $750,000 personal loan and her willingness to jeopardize her credit by instead engaging in what he termed a short sale. Moosa's attorney further requested that Gulwani provide him with documents pertaining to the sale and her communications with the bank. On December 5, 2014, Moosa's attorney sent a letter advising Gulwani's attorney that Moosa "has a willing buyer willing [sic] to purchase 5192 Berryman Ave 'AS IS' for $800,000.00" and "demand[ing]" that Gulwani "allow the sale at that price instead of the purported short sale." Moosa refused to sign the quitclaim deed Gulwani requested, prompting Gulwani to file her second ex parte request on December 8, 2014.

10

Moosa opposed Gulwani's ex parte request. He argued that no exigent circumstances warranted ex parte relief and that Gulwani violated the court's May 5, 2014 order by failing to list the home for sale. Moosa further argued that Gulwani's requested order "will divest Respondent of his property rights under the Marital Agreement that is a part of the Judgment." In his accompanying declaration, Moosa asserted that several unnamed realtors had informed him that "the property in its 'AS IS' condition can sell for $800,000-$1 Million and if remodeled can sell for up to $1.5 Million," and that he had lined up a buyer who was willing to pay $800,000 and was "also willing to help me remodel the property and jointly market it at a higher value." Moosa further asserted that the "current short sale if permitted will divest me of the sole asset in the marital distribution. Ms. Gulwani has her Beauty salon free and clear asset. [sic] I have no other asset and a short sale will seriously prejudice my asset and was not intended as a solution to solve Ms. Gulwani's credit issues. Her credit will be better protected by a regular sale with the currently available buyer at the regular sale [sic]."

The court granted Gulwani's request and appointed the court clerk "to forthwith execute the QuitClaim Deed attached hereto on behalf of Respondent to facilitate transfer of title from Respondent to Petitioner as a bona fide purchaser." It does not appear that a reporter was present at the ex parte hearing, and the record does not contain a more extensive ruling or statement of decision.

Moosa timely filed a notice of appeal.

## DISCUSSION

### I.   Moosa has standing to appeal.

Gulwani contends that Moosa lacks standing to appeal because he was not aggrieved by the trial court's ruling. We disagree.

"Any party aggrieved" may appeal from an appealable adverse judgment. (Code Civ. Proc., § 902.) "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) The affected right or interest "'"must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."'" [Citation.]"

11

(*Ibid.*)  Standing to appeal is construed liberally, and doubts are resolved in favor of finding standing.  (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

Moosa is an aggrieved party.  Prior to entry of the order on appeal, Moosa had an interest in the Berryman Property.  He previously had been ordered to vacate the property, and to cooperate with the listing and sale, but the deed remained within his dominion and control.  After the court's order appointing the clerk to execute a quitclaim deed in his stead, Moosa lost his complete interest in the Berryman Property.  This loss was immediate and was not de minimis or remote.  It supports Moosa's standing to prosecute the instant appeal.

**II.    The court had jurisdiction to consider Gulwani's ex parte request.**

Moosa contends the trial court lacked jurisdiction to consider Gulwani's second ex parte request, in which she asked for an order appointing the clerk to sign a quitclaim deed in Moosa's stead.  We disagree.

Although Moosa did not challenge the trial court's jurisdiction below, it is well-settled that jurisdictional challenges may be asserted for the first time on appeal, regardless of inconsistent conduct below, because subject matter jurisdiction cannot be conferred by waiver or estoppel.  (*In re Marriage of Horowitz* (1984) 159 Cal.App.3d 377, 381, fn. 4.)  The existence of jurisdiction is a question of law that we review de novo.  (*In re Marriage of Jensen* (2003) 114 Cal.App.4th 587, 592.)  To the extent that we must look to the marital settlement agreement to assess the contours of the court's jurisdiction, we likewise apply a de novo standard of review and use generally accepted canons of contract interpretation to guide our review of the agreement.  (*In re Marriage of Smith* (2007) 148 Cal.App.4th 1115, 1120.)

Moosa argues that the court lacked jurisdiction because Gulwani's "request for the trial court clerk to execute a quitclaim deed transferring the Berryman property [sic] from him to her flies in the face of Judgment" and because Family Code section 2122 "barred the trial court from interfering with the Judgment on Reserved Issues under the circumstances of the case."  These arguments are at bottom a contention that the court

overstepped its jurisdiction by entertaining an ex parte request that in Moosa's view would, if granted, alter the terms of the parties' marital settlement agreement.

"It is true as a general principle of law after the trial court has divided the property, and the judgment has become final, the court loses jurisdiction to modify or alter the division made. [Citation.] An exception to this general rule, however, arises in cases where the court expressly reserves jurisdiction to modify a property award. [Citations.]" (*Mueller v. Walker* (1985) 167 Cal.App.3d 600, 605-606; see also *In re Marriage of Thorne & Raccina* (2012) 203 Cal.App.4th 492, 499-500.) Here, in its May 8, 2012 judgment incorporating the parties' marital settlement agreement, the court explicitly "reserve[d] jurisdiction over any and all property to be divided pursuant to any provision of this Judgment, and over any and all other executory provisions of this Judgment." The judgment also contained a provision stating that the judgment could be "altered, amended, modified, or terminated . . . by an order of the Court regarding issues over which jurisdiction is reserved by the Court . . . ," and another authorizing the appointment of the clerk to "execute any instrument or document necessary or convenient to carry out the terms or intent of this Judgment" upon a party's failure to do so. These provisions straightforwardly and unambiguously vest the court with jurisdiction to revisit and modify the property award. Thus, even if we accept Moosa's position that Gulwani's ex parte request was a veiled attempt to modify the terms of the judgment, it is plain that the court had the jurisdiction not only to consider but also to grant the request.

We are not persuaded otherwise by Moosa's summary invocation of Family Code section 2122. That section governs "[t]he grounds and time limits for a motion to set aside a judgment, or any part or parts thereof" and sets forth the exclusive bases on which family court judgments may be set aside. (Fam. Code, § 2122.) Gulwani's ex parte request for appointment of the clerk to sign a document on Moosa's behalf did not seek to set aside the judgment or allege any of the enumerated grounds therefor, such as fraud, duress, or mistake. It accordingly was not in name or substance a motion to set aside the judgment. It was a response to Moosa's continued failure to comply with both the original judgment, which required him to remove Gulwani's name from the

13

encumbrances on the home and made clear the parties' "understanding . . . that the property shall be listed for sale and sold," and the court's May 5, 2014 order directing his cooperation with "the listing and sale of the property" by Gulwani, from which he did not appeal.

### III. The order was not prohibited by the original judgment.

Moosa also argues that "the original judgment on reserved issues did not provide that the trial court could order for the sale of the Berryman Property." He further contends that the judgment only required him to use his best efforts to sell the property, and that the court's order that the clerk execute a quitclaim deed "flies in the face of the Judgment and deprives Mr. Moosa of his right thereunder." We do not find these arguments persuasive.

The order Moosa is challenging did not order the sale of the Berryman Property. The court ordered the home sold in its unappealed May 5, 2014 order, which unambiguously directed that "the Berryman Property be forthwith listed for sale and sold by Petitioner." The order at issue here provided only that "The Court appoints the Clerk/assistant Clerk of the Court to forthwith execute the QuitClaim Deed attached hereto on behalf of Respondent [Moosa] to facilitate transfer of title from Respondent to Petitioner [Gulwani] as a bona fide purchaser." We agree with Gulwani that the challenged order simply implemented the unchallenged May 5, 2014 order, and was a valid exercise of the court's discretion. (See *Blueberry Properties, LLC v. Chow* (2014) 230 Cal.App.4th 1017, 1021; Hogoboom & King, Cal. Prac. Guide: Family Law (The Rutter Group 2015) paragraph 16:208, p. 16-74 ["Most 'awards' and orders in family law litigation are reviewed on appeal under the deferential abuse of discretion standard."].) Moosa sought to stay the May 5, 2014 order and urged the court to reconsider it, but he did not file an appeal challenging its substance, effect, or interpretation of the original

14

judgment. He cannot belatedly do so by way of this appeal of the court's subsequent order effectuating its terms.[3]

Even if we were to view the challenged order as an order that the Berryman Property be sold, we would conclude it was not foreclosed by the judgment. The marital settlement agreement embodied in the judgment provided, "It is the understanding of the parties, and the intent of [Moosa], that the property shall be listed for sale and sold." The judgment further ordered both Moosa and Gulwani "to perform any and all other acts, necessary or convenient to carry out the terms or intent of this Judgment," and authorized them to request appointment of the clerk if the opposing party failed to do so. That is exactly what happened here: Gulwani asked the court for an order appointing the clerk to effectuate sale of the property upon Moosa's failure to perform the acts necessary to achieve that goal himself. Moosa's claims that he complied with the terms of the judgment and is being unfairly punished do not compel a different conclusion.

---

[3] Moosa does not argue that the May 5, 2014 order was issued in excess of the court's fundamental jurisdiction or is otherwise void. To the extent he may attempt to suggest the May 5, 2014 order was voidable, his time to do so has passed. "When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.' [Citations.]" (*People v. American Contractors Indem. Co.* (2004) 33 Cal.4th 653, 661.)

## DISPOSITION

The order of the trial court is affirmed.  Gulwani is to recover her costs of appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


EPSTEIN, P. J.


WILLHITE, J.